610 So.2d 1148 (1992)
Jimmy D. BOX
v.
STATE of Mississippi.
No. 90-KA-0303.
Supreme Court of Mississippi.
December 10, 1992.
*1149 Edward C. Fenwick, Jackson & Fenwick, Kosciusko, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
BANKS, Justice, for the court:
Jimmy D. Box prosecutes this appeal from his conviction of bribery of a public official entered in the Circuit Court of Choctaw County. He was sentenced to serve ten (10) years in the custody of the Mississippi Department of Corrections.
Box raises four issues concerning (1) his right to a speedy trial; (2) double jeopardy following trial after mistrial; (3) the denial of a motion for change of venue, and (4) allegedly improper closing oratory. Finding no error, we affirm.

FACTS
On April 3, 1989, Box attempted to bribe and influence the official action of Mike Hutchinson, Sheriff of Choctaw County. The proof established that Box gave $500 cash to Sheriff Hutchinson in an attempt to influence Hutchinson to allow Box to sell controlled substances in Choctaw County without interference by the sheriff's office and to keep Box informed of any pending investigations.
The main transaction, which took place in Choctaw County on Little Mountain at the Jeff Busby State Park, was video and audio taped by George Beckett, a criminal investigator for the office of the district attorney, and Lee McGlothin, a narcotics agent. After Box left the scene of the transfer, he was pursued by Sheriff Hutchinson, who intended to arrest him. Box, however, evaded a roadblock and managed to elude his captors and escape on foot after abandoning his automobile. The defendant testified that after the events of April 3, he hid in the forests of Choctaw County for nearly three months. His whereabouts were unknown until July 5, 1989, when he was arrested in Jackson.
Various audio and video tapes inextricably linking Box to the bribe were introduced into evidence by the State, and neither *1150 the weight nor the sufficiency of the evidence has been assailed on appeal. Box testified in his own behalf and freely admitted he gave $500 in cash to Sheriff Hutchinson on the morning of April 3, 1989. Box claimed, however, he did so only to obtain evidence of the sheriff's corruptibility. This defense was rejected by the jury.

ISSUES

1. Speedy Trial
Box contends the State violated his constitutional right, as opposed to his statutory right, to a speedy trial when it sustained the State's motion for a continuance predicated on the unavailability of a material witness. According to Box, this allegedly substantial and unjustified six-month delay prejudiced him because he was compelled to spend an additional six months incarcerated inside the county jail. No claim is made that any delay prejudiced Box in the preparation of his defense to the crime charged.
Following the crime committed on April 3, 1989, Box successfully eluded his captors until he was arrested in Jackson on July 5, 1989. An indictment was returned on August 18, 1989, and Box was arraigned on August 21, 1989. He was first put to trial on February 20, 1990, 230 days following his arrest. That trial ended in a mistrial. Box was retried and convicted six days later on February 26, 1990.
Trial had originally been set for August 31, 1989, however, on August 30, the State moved for a continuance due to the unavailability of Mr. George Beckett, who was in Czechoslovakia on a mission for the United States Department of State, as well as the unavailability of the video tape he had taken of the transaction. The motion for a continuance was resisted by Box who made a demand for a speedy trial in open court on August 31, 1989. The trial court granted the State's request for a continuance because "... there cannot [be] any better evidence for a jury than a videotape ...", and because the defendant was a fugitive from justice at the time Mr. Beckett left the country.
The constitutional right to a speedy trial, unlike the statutory right created by Miss. Code Ann. § 99-17-1 (Supp. 1992), attaches when a person has been effectively accused of a crime. Beavers v. State, 498 So.2d 788 (Miss. 1986). Box's right to a speedy trial attached on July 5, 1989, the date he was arrested. Jenkins v. State, 607 So.2d 1137 (Miss. 1992); Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Jaco v. State, 574 So.2d 625, 629 (Miss. 1990). Box was tried for the first time on February 20, 1990, exactly 230 days (7 1/2 months) following his arrest. See Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986).
When a defendant's constitutional right to a speedy trial is at issue, the balancing test set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is applicable. The factors to consider are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.
(1) Length of the Delay: 230 days.
In our opinion, 230 days (7 1/2 months) is not an inordinate delay. Box has not cited any case where a delay of fewer than 298 days has inured to the benefit of the defendant. In Smith v. State, 550 So.2d 406, 408 (Miss. 1989); Beavers v. State, supra; Burgess v. State, 473 So.2d 432, 433 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985); and Perry v. State, 419 So.2d 194, 199 (Miss. 1982), each defendant, in the wake of a Barker analysis, was discharged following delays of 370, 423, 480, 298, and 566 days, respectively. This factor weighs heavily in favor of the State.
We observed in Adams v. State, 583 So.2d 165, 168 (Miss. 1991), that a seven-month delay was sufficient delay to necessitate further inquiry into the other factors contained in the Barker equation. Under Adams, expanded inquiry is required.
(2) Reason for the Delay: Unavailability of a material witness and unavailability of material evidence.
A majority of the delay (173 days) was embraced by the continuance granted to *1151 the State. On the date originally scheduled for trial, the State did not have access to the video tape depicting the transaction or to the witness, who operated the video camera.
In June of 1989, prior to Box's arrest, George Beckett, the district attorney's investigator, had been summoned to Czechoslovakia by the United States Department of State and was unavailable for trial. Although Beckett had retired from active service with the Department of State, he was still subject to recall for special assignment. He had an understanding with the district attorney that from time to time he might be recalled into service. In addition to having custody of the video tape located inside a vault under his supervision and control, Beckett was also a chain of custody witness for introduction of the five one hundred dollar bills he received from Sheriff Hutchinson after the attempted bribery. There can be no doubt Beckett was a necessary and material witness for the State.
We think the reason for the nearly six-month delay occasioned by the continuance was both a reasonable and legitimate one. Beckett's absence from both the state and the continent was not created by the prosecution. Nor was the unavailability of the tape and the witness a product of the State's shortsightedness or negligence. At the time of Beckett's departure in June, the defendant was still at large. In our opinion, the delay was fully explicable and justified. This factor also favors the State.
(3) Assertion of Right: A single request for speedy trial was made by Box on August 31, 1989, approximately six months prior to retrial.
Box's only demand for a speedy trial was made during the course of resisting the State's motion for a continuance. Box was tried at the next succeeding term of circuit court. This was as soon after his request as possible, without the intervention of a special term. This factor favors the defendant, albeit slightly.
(4) Prejudice to the Defendant: At best, an additional six months of pretrial incarceration.
In Smith v. State, supra, 550 So.2d at 408 we observed that "it may generally be said that any delay of eight (8) months or longer is presumptively prejudicial." See also Jenkins v. State, supra, 607 So.2d at 1139; Adams v. State, supra, 583 So.2d at 168. The 7 1/2 month delay in the case sub judice passes the eight-month test. A 230-day delay from the date of arrest until trial of the defendant is not presumptively prejudicial. It was incumbent upon the defendant to demonstrate actual prejudice.
Box does not claim he was in any way prejudiced in the preparation of his defense by the delay itself or that his six months in the county jail interfered with the preparation of his defense. We cannot equate hardship with prejudice to Box. Six months of incarceration in the county jail, standing alone, is not sufficient to demonstrate the type of prejudice required here. In any event, a former bond had been revoked after Box's arrest on the bribery charge. It is possible, therefore, Box would have remained in jail regardless of when he was brought to trial on the new charge. In other words, Box has failed to demonstrate he would not have been in jail anyway. This factor favors the State.
On balance, an analysis of the Barker factors favors the State. The length of the delay was not inordinate; there was both a reasonable and legitimate justification for the delay for which the State was not at fault; the defendant's assertion of his right was made 173 days prior to trial in conjunction with his objection to the State's request for a continuance, and there was no actual prejudice to Box in his defense. Adams v. State, supra; Wiley v. State, 582 So.2d 1008 (Miss. 1991); Handley v. State, supra; Jaco v. State, supra. Accordingly, we reject the defendant's contention he was denied his constitutional right to a speedy trial.

2. Double Jeopardy
Box contends his second trial conducted on February 26, 1990, following the declaration of a mistrial during the first trial attempted on February 20, 1990, violated the constitutional prohibition against *1152 double jeopardy. The first trial was aborted by the circuit judge, when it was brought to his attention that a female member of the venire had failed, in the wake of an unambiguous inquiry, to divulge she was related to a law enforcement officer. We hold a "manifest necessity" existed for the declaration of a mistrial in the first trial because of an errant juror, and that Box's plea of double jeopardy did not bar retrial of this defendant.
When this case was called for trial on February 20, 1990, a jury was selected and empaneled. Following a noon recess, all parties met in chambers where the district attorney announced to the court and the defense that one of the jurors was the sister of a law enforcement officer. This juror was brought into chambers and questioned by the court. Defense counsel thereafter objected to the presence of the juror on the panel selected to try his case. Because there was no alternate juror to sit in the challenged juror's stead, the trial judge, sua sponte, declared a mistrial and reset trial of the case for February 26, 1990.
When the case was recalled on February 26, 1990, Box moved to dismiss the prosecution on the grounds of double jeopardy. In ruling on this matter, the circuit judge recognized that the law required him to sustain the motion of the defendant to strike the juror, who had not been responsive. Her departure left eleven jurors to hear the matter and, accordingly, "... there was simply no jury to try this case. Therefore, the Court finds that there was a manifest necessity for declaring a mistrial and resetting the case, which was done in open court, in the presence of both parties." [emphasis supplied]
The propriety of the lower court's decision to declare, sua sponte, a mistrial is to be tested by the "manifest necessity" standard. The basic ground rules are found in Jones v. State, 398 So.2d 1312, 1314 (Miss. 1981), where we said:
Mandated by decisions of the United States Supreme Court, the rule in this state beginning with this case is that double jeopardy attaches in any criminal proceeding at the moment the trial jury is selected and sworn to try the case. Because of the guarantee against double jeopardy granted to all citizens by the Fifth Amendment to the United States Constitution no retrial for the same offense will be permitted in any criminal case in which the first trial, following the swearing and impaneling of the jury, was aborted prior to conclusion, unless exceptional circumstances existed in the first case, and there was a manifest necessity for the trial judge to declare a mistrial. [emphasis supplied]
"The double jeopardy prohibition does not mean that every time a trial aborts or does not end with a final judgment the defendant must be set free." Watts v. State, 492 So.2d 1281, 1284 (Miss. 1986) citing Schwarzauer v. State, 339 So.2d 980, 982 (Miss. 1976). "[I]f a mistrial is granted upon the court's own, or upon the state's motion, a second trial is barred because of double jeopardy unless there was a manifest necessity for the mistrial, taking into consideration all the circumstances." Watts v. State, supra, 492 So.2d at 1284 citing Jones v. State, supra, 398 So.2d 1312 (Miss. 1981).
In the case at bar, once the recalcitrant juror's reticence to answer questions dealing with her relationship to law enforcement officers became known, the court had no choice but to remove her from the jury after the defendant objected to her presence. Laney v. State, 421 So.2d 1216 (Miss. 1982); Odom v. State, 355 So.2d 1381 (Miss. 1978). Because the entire venire had been exhausted by the time twelve jurors had been selected to try the case, the absence of an alternate juror to replace the juror discharged was an exceptional and striking circumstance. The declaration of a mistrial was required by "manifest necessity", taking into account all of the circumstances.
Neither the State nor the defendant requested a mistrial; rather, a mistrial was declared by the court on its own motion. "Even if the state does not move for a mistrial, the involvement of the state is relevant in determining whether a second *1153 trial is barred." Watts v. State, supra, 492 So.2d at 1284. Here the prosecutor simply disclosed, both to the court and to defense counsel, that the juror had failed to respond. To adopt the defendant's position that double jeopardy barred retrial on that basis would penalize the State for being candid, honest, and forthright. Any decision by this Court that would invite or encourage prosecutors to remain silent about such matters as these would not be in the best interest of the State or the defendant. There is no merit to this claim of error.

3. Change of Venue
Box filed a motion for a change of venue on February 19, 1990, claiming it would be impossible for him to receive a fair and impartial trial in Choctaw County, due to adverse pretrial publicity. The motion was heard and denied by the trial court prior to trial. After listening to the testimony, the circuit judge overruled the motion with the observation that "... there is no evidence before this Court that there is any widespread prejudice against this man, or any kind of uprising about it, or any general pattern of animosity toward him or prejudice toward him."
On appeal Box claims he was entitled to a change of venue because he demonstrated he could not receive a fair and impartial trial in Choctaw County, due to prejudgment of his case and grudge or ill will to the defendant in the public mind. We have reviewed the testimony with great care, and in our opinion the trial court's refusal to grant a change of venue was not an abuse of judicial discretion.
The following language found in McKinney v. State, 521 So.2d 898, 900 (Miss. 1988) is apropos to the facts confronting us:
Six months of silence intervened between the publicity and the trial. The publicity here did not approach the level of publicity present in Wiley v. State, 484 So.2d 339 (Miss. 1986), where this Court affirmed a denial of motion to change venue. The level of publicity certainly did not approach that in Johnson v. State, 476 So.2d 1195, 1211 (Miss. 1985). Of the six factors indicating that venue should be changed, only one is present in this case. Weeks v. State, 493 So.2d 1280, 1286 (Miss. 1986). The trial court's refusal to grant a change of venue was not an abuse of discretion.
"On the issue of venue change, this Court will not disturb the ruling of the lower court where the sound discretion of the trial judge in denying change of venue was not abused." Harris v. State, 537 So.2d 1325, 1328 (Miss. 1989); Wiley v. State, 484 So.2d 339, 342-43 (Miss. 1986); White v. State, 495 So.2d 1346, 1349 (Miss. 1986); Cabello v. State, 490 So.2d 852, 854-55 (Miss. 1986). No abuse of judicial discretion has been demonstrated here.
The trial record fully supports the findings made by the trial judge that media coverage of the charge lodged against Box was not widespread and did not reach massive or epidemic proportions. The facts found in this case are not comparable to the facts on the venue question found in the capital cases of Fisher v. State, 481 So.2d 203 (Miss. 1985) and Johnson v. State, 476 So.2d 1195 (Miss. 1985). Moreover, we note that although the jury voir dire disclosed that a high percentage of jurors had heard something about the case, Box did not renew his motion for change of venue or move to quash the venire. Therefore, we uphold the integrity of the trial court's decision to deny a change of venue.

4. Closing Argument
In his closing argument to the jury, the district attorney stated: "This doper over here, you can read from the lines detests Mike Hutchinson." Box contends on appeal the prosecutor's characterization of him as a "doper" had no evidentiary basis and that his motion for a mistrial should have been sustained. The trial judge overruled the motion on the ground "... the evidence support[s] such an inference in argument."
The problem with Box's argument is that he failed to contemporaneously object to the prosecutor's remark, and his motion for a mistrial was not made until the following *1154 day after the verdict of guilty had already been returned. This was too late.
"Where a defendant fails to object to a statement by the district attorney during closing argument, a motion for mistrial after the jury has retired to consider its verdict comes too late." Coleman v. State, 378 So.2d 640, 649 (Miss. 1979) citing Coburn v. State, 250 Miss. 684, 168 So.2d 123 (1964). See also Marks v. State, 532 So.2d 976 (Miss. 1988) [Defense challenge to prosecutor's closing remarks was procedurally barred on appeal where trial counsel did not contemporaneously object to argument and did not move for a mistrial until after the jury had been excused from the courtroom]; Williams v. State, 512 So.2d 666, 672 (Miss. 1987) [Where defense counsel failed to object to closing argument until after the verdict when he included the prosecutor's remarks in a list of errors in his motion for a new trial, the failure of the objection was fatal.]
Put another way, a contemporaneous objection to the allegedly prejudicial remarks is required. Handley v. State, 574 So.2d 671 (Miss. 1990); Hill v. State, 432 So.2d 427 (Miss. 1983). The following language found in Blackwell v. State, 44 So.2d 409, 410 (Miss. 1950), is still good law:
It is now well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant, he cannot wait and take his chances with the jury on a favorable verdict and then obtain a reversal of the cause in this Court because of such error, but he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial. * * * [emphasis supplied]
Except where the comment involves a fundamental right (see, e.g., Livingston v. State, 525 So.2d 1300, 1306 (Miss. 1988), this Court has consistently quoted from and followed Blackwell, supra. See Sand v. State, 467 So.2d 907, 910 (Miss. 1985); Woods v. State, 393 So.2d 1319, 1325 (Miss. 1981); Myers v. State, 353 So.2d 1364, 1369 (Miss. 1978); Ratliff v. State, 313 So.2d 386, 388 (Miss. 1975); Barlow v. State, 272 So.2d 639, 640 (Miss. 1973); McGarrh v. State, 249 Miss. 247, 148 So.2d 494, 507 (1963).
In the case at bar, the prosecutor's comment was not so inflammatory in light of the evidence of guilt, that we should reverse for the trial court's having failed to take corrective action on its own motion. We hold the point was waived in the court below and is deemed forfeited on appeal to this Court.
CONVICTION OF BRIBERY OF A PUBLIC OFFICER BY ATTEMPTING TO INFLUENCE OFFICIAL ACTION AND SENTENCE OF TEN YEARS AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, PITTMAN, McRAE and ROBERTS, JJ., concur.
DAN M. LEE, P.J., not participating.