ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. A jury sitting before the Hinds County Circuit Court found Timothy Collins guilty of aggravated assault. The circuit court sentenced Collins to twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Collins appeals and claims that he was entitled to a lesser-included-offense instruction on simple assault. Additionally, Collins claims the circuit court should have granted his motion for a mistrial after the prosecution had commented on his decision to decline to testify. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Collins’s conviction is the result of his misguided effort to avenge his younger sister. The record suggests that Collins has at least four sisters. Preston Sterling was engaged to one of Collins’s sisters, Seneca. Collins’s twelve-year-old sister, Yneshia, was at Battlefield Park in Hinds County, Mississippi, on August 5, 2006. Sterling was also at Battlefield Park on that date.
 

 ¶ 3. According to Collins’s theory of the case, Sterling slapped Yneshia at the park. Sterling denied that he had slapped Ynes-hia. It is undisputed that Seneca and two of her and Collins’s sisters confronted Sterling in the parking lot of an abandoned apartment complex at 753 Silas Brown Street in Jackson, Mississippi. Anthony Wilson, who had previously lived in one of the apartments before the complex had been abandoned, testified that he saw the confrontation. According to Wilson, three women argued with Sterling regarding his treatment of their younger sister. Wilson testified that one of the women told Sterling “that he was going to die.” Wilson further testified that, approximately two or three minutes later, a green car pulled into the apartment complex. The woman driving the green car stopped. According to Wilson, a man got out of the car, and without exchanging any words with Sterling, the man shot Sterling multiple times. Wilson also testified that, after Sterling had fallen to the ground, “[the shooter] shot him again.” The shooter then got back into the car, and the woman drove away. Wilson later identified Collins as the man who had shot Sterling.
 

 ¶ 4. Sterling was critically wounded. He had been shot five times with a .45-caliber pistol. Sterling sustained wounds to his head, his left arm, and his side. He had also been shot twice in the back. One of those shots damaged his spinal cord. Sterling survived, but he was paralyzed as a result of the shot that damaged his spinal cord.
 

 
 *1176
 
 ¶ 5. Monica Hamledary was the driver of the green car. She testified that she did not know that Collins was going to shoot Sterling. Hamledary had known Collins for some time when she encountered him on Winter Street on August 5, 2006. Collins got in her car, and they both were on their way to a nearby store when Collins directed her toward the apartment complex. Hamledary stopped the car, and Collins got out. Hamledary testified that she was not paying attention to what Collins was doing because she was talking on her cellular telephone and listening to her car radio.
 

 ¶ 6. According to Hamledary, she first noticed the confrontation between Collins and Sterling when shots were fired. Ham-ledary testified that a tree obscured her view of the events. She further testified that she did not hear Collins say anything to Sterling. After he had shot Sterling, Collins returned to the car and told Ham-ledary to drive. Hamledary later explained that she did not immediately report the incident because she was in shock. She left Collins at a grocery store on Farish Street in Jackson, and after running another errand, she went home. After she arrived home, she saw a news report regarding the incident. The news report also stated that authorities were searching for the female driver of the green car. Hamledary called authorities and gave a statement shortly after midnight.
 

 ¶ 7. Collins gave a statement after he was arrested. Within his statement, Collins claimed that Sterling displayed a pistol when Collins approached him. According to Collins, he and Sterling exchanged words. Collins told authorities that Sterling had said, “you’ve got yours, I’ve got mine, let’s do it.” Collins admitted that he had fired his .45-caliber pistol. However, according to Collins, he fired his pistol at a downward angle toward Sterling’s legs. Collins stated that he threw his .45-caliber pistol in the Mississippi River after he had shot Sterling. Collins’s theory of the case was that the bullets had ricocheted off the pavement and struck Sterling. As previously mentioned, the jury found Collins guilty of aggravated assault. Collins appeals.
 

 ANALYSIS
 

 I. JURY INSTRUCTIONS
 

 ¶ 8. Collins claims the circuit court should have granted his request for a simple-assault instruction. Collins’s proffered jury instruction, designated as jury instruction D-9, states:
 

 If you, the Jury[,] find that the State has failed to prove any one of the essential elements of the crime of Aggravated Assault, you must find ... Collins not guilty of Aggravated Assault and you will proceed with the deliberation to decide whether the State has proved beyond a reasonable doubt all the elements of simple assault.
 

 The crime of Aggravated Assault is distinguished from simple assault if you find that ... Collins negligently caused bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.
 

 In the event you find from the evidence that the defendant is guilty of the lesser[-]included offense of simple assault, your verdict shall be as follows:
 

 ‘We, the jury, find the defendant guilty of simple assault.”
 

 At trial, Collins argued as follows:
 

 Your Honor, on their argument, first, that it was self-defense, but that he shot down at the legs which the bullet— there’s been testimony of the fact that bullets hit concrete, that they could ricochet, that ricochet is considered negli-
 
 *1177
 
 genee. And I think there is enough for the jury to consider that as maybe a bullet hit the parking lot, it ricocheted, it hit the window rail, it hit the window. That could be considered as negligence in shooting the firearm and that’s before the jury. That’s something they could consider and come back with the simple-assault [verdict].
 

 The circuit court refused proffered jury instruction D-9 without comment. Collins claims the circuit court’s decision amounts to reversible error.
 

 ¶ 9. We conduct a de novo review of a circuit court’s decision that a defendant is not entitled to a lesser-included-offense instruction, as this is a question of law.
 
 Babb v. State,
 
 17 So.3d 100, 102-03 (¶ 8) (Miss.Ct.App.2009). Regarding the standard of review for whether a lesser-included-offense instruction is warranted, we have stated as follows:
 

 A lesser-included-offense instruction should be granted unless the trial judge — and ultimately this Court — can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (and conversely not guilty of at least one essential element of the principal charge).
 

 Id.
 
 (quoting
 
 Harper v. State,
 
 478 So.2d 1017, 1021 (Miss.1985)).
 

 ¶ 10. Collins was charged with aggravated assault. “A person is guilty of aggravated assault if he ... attempts' to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.” Miss.Code Ann. § 97 — 3—7(2)(b) (Supp.2010). Simple assault occurs when a person “negligently causes bodily injury to another with a deadly weapon-” Miss.Code Ann. § 97 — 3—7(1)(b) (Supp.20010). According to Collins, his request for a simple-assault instruction was supported by the testimonies presented from two members of the Jackson Police Department: Detective Ford Hayman and Crime Scene Investigator Robert Bufkin. Collins’s attorney asked Detective Hayman the following question: “Well, if a bullet is shot near concrete, it could ricochet, couldn’t it?” Detective Hayman answered, “I suppose, yes, ma’am.” During cross-examination, Investigator Bufkin was asked: “[N]ow if someone was shooting downward, could the bullet ricochet off the concrete?” Investigator Bufkin responded: “[T]hat’s possible.” According to Collins, Detective Hayman’s and Investigator Bufkin’s testimonies support his claim that he fired downward at Sterling’s legs. Collins also notes that bullet fragments were found in the wooden railing of the apartments and in a window pane.
 

 ¶ 11. While “a defendant is entitled to have jury instructions given which present his theory of the case, the trial court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 
 Babb,
 
 17 So.3d at 103 (¶ 12) (citations omitted). When Collins asked Detective Hayman whether a bullet could have ricocheted off of concrete, Detective Hayman responded, “I suppose [so].” Investigator Bufkin’s response to the same question was that it was possible for a bullet to ricochet off of concrete. “[A] lesser-included offense instruction should never be granted on the basis of pure speculation.”
 
 Fairchild v. State,
 
 459 So.2d 793, 801 (Miss.1984). Investigator Bufkin’s and Detective Hay-man’s testimonies can only be described as speculation. Collins initially claimed that
 
 *1178
 
 he had acted in self-defense when he gave a statement to Detective Hayman. However, there was no further mention of that theory during Collins’s trial. Wilson testified that he saw the entire sequence of events that resulted in Sterling being shot five times. Wilson also testified that he did not see Sterling with a weapon. Sterling testified that he did not have a weapon — much less display one — prior to Collins shooting him. Authorities did not find a weapon in Sterling’s vicinity when they responded to the scene. Furthermore, there was no evidence that suggested that Collins had negligently caused Sterling’s injuries. Sterling testified that Collins got out of Hamledary’s car, announced that he was going to kill Sterling, and “just started shooting.” Collins shot Sterling in the head, the side, the left arm, and twice in the back. According to Sterling, he was lying on the ground when Collins stood over him and shot him once more in the back. As a result, Sterling was in the hospital between three and four months. The bullet in Sterling’s lower spine could not be removed. Sterling is paralyzed for the remainder of his life. Wilson testified that Collins “jumped out [of] the car,” and without exchanging any words with Sterling, Collins “pull[ed] the gun up and shot [Sterling].” Detective Hayman recovered six spent shell casings from the parking lot. Collins shot Sterling five times. Even viewing the evidence in the light most favorable to Collins, and considering all reasonable favorable inferences which may be drawn in his favor, no reasonable jury could have found him guilty of simple assault. Consequently, we find no merit to this issue.
 

 II. MISTRIAL
 

 ¶ 12. Collins argues that the circuit court should have granted his request for a mistrial after the prosecution made what Collins considers to be improper comments during closing arguments. Specifically, Collins takes issue with the following comment by the prosecution:
 

 Let’s put the victim on trial. It’s his fault. That’s what they’re saying. It’s the victim’s fault. Did you just hear her say, [“]yeah, maybe he did shoot at his feet, four, five, six, seven, eight times. But he wasn’t trying to kill him.[”] Hell, yes, he was trying to kill him. I mean, it’s absurd to think that he wasn’t trying to kill him. And let me ask you this. How many witnesses did they put up that said he didn’t do it[?]
 

 At that point, Collins’s attorney objected and asked to approach the bench. The bench conference was not recorded. The prosecution concluded its closing argument. The jury then retired to deliberate. The record indicates that the circuit judge announced that he had been informed that the jury had reached a verdict. At that time, the following exchange transpired:
 

 [Collins’s attorney]: Your Honor, before the jury comes in, may I just say one thing on the record?
 

 The Court: Yes.
 

 [Collins’s attorney]: I raised an objection during [the prosecution’s] closing about not one witness being called. I wasn’t clear whether the court had actually ruled on my objection because the defense has no burden at all to bring witnesses, and I just wanted to get that on the record. I wasn’t sure that there was a ruling on the record.
 

 The Court: Yes, there was. I overruled the objections[,] and I instructed [the prosecution] to rephrase the question because what he stated was not one witness had been called, but he did not indicated that the defendant had not called any witness[es] and he did not infringe upon the defendant’s right to
 
 *1179
 
 testimony or not to testify and not call witnesses.
 

 [Collins’s attorney]: Okay. And just for the record, Your Honor, I would like to ask for a mistrial on the record based on your ruling, based on that I would just like to ask for a mistrial on the record.
 

 The Court: All right. That mistrial motion is untimely. But if it had been made at the time of the objection it would have been denied.
 

 ¶ 13. Collins argues that the prosecution’s comment was improper because it infringed on his right to remain silent. “It is ... well settled that when anything transpires during the trial that would tend to prejudice the rights of defendant ... he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial.”
 
 Blackwell v. State,
 
 44 So.2d 409, 410 (Miss.1950). More recently, this Court has reiterated that a defendant’s failure to move for a mistrial in a timely manner renders the issue procedurally barred on appeal.
 
 Parker v. State,
 
 20 So.3d 702, 707-08 (¶ 23) (Miss.Ct.App.2009). “[A] motion for mistrial after the jury has retired to consider its verdict comes too late.”
 
 Williams v. State,
 
 684 So.2d 1179, 1203 (Miss.1996) (quoting
 
 Box v. State,
 
 610 So.2d 1148, 1154 (Miss.1992)). A contemporaneous motion for a mistrial is necessary because it allows the offering party and the trial court an opportunity to obviate the objection.
 
 Id.
 
 In other words, a contemporaneous motion for a mistrial “is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance.”
 
 Knight v. State,
 
 751 So.2d 1144, 1154 (¶ 26) (Miss.Ct.App.1999). Because Collins did not move for a mistrial until well after the prosecution had concluded its closing argument and the jury had announced that it had reached a verdict, he is procedurally barred from raising this issue on appeal.
 

 ¶ 14. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.