MAXWELL, J.,
for the Court:
¶ 1. A jury in the Hinds County Circuit Court found Antonio Smith guilty of armed robbery. On appeal, Smith argues: (1) the State impermissibly referenced his post-Miranda silence; (2) the trial court erroneously admitted evidence of drugs found in his vehicle; (3) the State violated Batson in exercising its peremptory strikes; and (4) the trial court erred in denying his proposed misidentification instruction. Finding no reversible error, we affirm.
FACTS
¶ 2. On April 30, 2006, an armed robbery occurred at a Jackson, Mississippi gas station. The gunman approached the store clerk, Patricia Gordon, and asked her for some Black & Mild cigars. When the man handed Gordon a five-dollar bill, she opened the cash register. The gunman then demanded, “Give me all the money,” and brandished a firearm he had hidden beneath his shirt. Gordon gathered the money from the register and placed it on the counter. The gunman took the money and cigars, then left the store.
¶ 3. Gordon immediately called 911. She told authorities the robber’s vehicle had a personalized license plate, reading “TY ROSE.” This license plate was registered to Rosenna Adams (Smith’s wife) for a GMC Yukon. A check of the personalized plate led police to Smith’s residence, where a GMC Yukon with “TY ROSE” on its tag was parked. Smith allegedly ran inside the house and refused to answer the door. Officers dispatched a SWAT team to the house, and a three-hour stand off ensued. Smith was eventually removed from the house and arrested. After obtaining Adams’s consent, police searched the Yukon and found a pack of Black & Mild cigars on the front floorboard and another pack on the rear floorboard. Officers also seized five plastic bags containing a “green leafy” substance, allegedly marijuana, from the rear seat of the vehicle.
¶ 4. On the date of the robbery, Gordon gave a written statement to police. She reported being robbed at gunpoint by a black male driving an “SUV” with “Ty Rose” on its license plate. The next day, an officer presented Gordon with a photographic lineup, and she identified Smith as the man who had robbed the gas station. At Smith’s trial, Gordon again identified Smith as the armed robber and described the “Yukon” he had driven with “TY ROSE” on the tag.
¶ 5. Smith testified in his own defense and denied robbing the gas station: He also denied he had ever visited the particular gas station where the robbery occurred. But he acknowledged he is sometimes called “Ty” and has a tattoo bearing that nickname. He also admitted the vehicle with “TY ROSE” on the license plate was his. He explained “TY ROSE” was a. combination of his and his wife Rosenna’s names. He claimed he had purchased the Black & Mild cigars found in his vehicle at a “local discount tobacco store.”
¶ 6. The jury found Smith guilty of armed robbery. The circuit court sentenced him to fifteen years, with ten to serve and five suspended. Smith timely appealed.
DISCUSSION
I. Comment on Right to Remain Silent
¶ 7. Smith claims the State improperly commented on his post-Miranda silence, first during an officer’s testimony and later during closing argument.
A. Officer’s Testimony
¶ 8. Smith’s first challenge is based on the following exchange during Officer Kent Daniels’s testimony:
*126 [The State]: Okay. Did you have any contact with the suspect?
[Officer Daniels]: Once they brought the suspect out the house, I had a patrol officer to transport him downtown to the unit, and I came down and advised him of his Miranda rights, and told him, you know, we want to get a statement from him of what happened, and he refused to give me a statement.
(Emphasis added). Smith’s counsel objected at this point, and the parties approached the bench. The bench conference was neither recorded nor described in the record. However, after the State had concluded its case and the jury had been excused, defense counsel addressed the comment: “You’re Honor, we just want to put on the record about the objection to [the] statement about the plaintiffs [sic] refused to talk. The Supreme Court has said numerous times that whether the defendant decides to talk to officers should not be mentioned[.]” Our review shows Smith’s counsel neither requested a mistrial nor a curative instruction. And the trial court did not discuss or rule on his objection, but instead moved on to other issues.
¶ 9. When reviewing challenges to comments on post-Miranda silence, we are generally faced with a trial court’s denial of a motion for a mistrial, which we review for abuse of discretion. Gilbert v. State, 48 So.3d 516, 521 (¶ 20) (Miss.2010). But here, Smith did not seek a mistrial. We agree with the State that Smith failed to preserve this issue for appeal. The Mississippi Supreme Court has held that “when anything transpires during the trial that would tend to prejudice the rights of defendant^] ... he must ask the trial court for a mistrial upon the happening of such occurrence when the same is of such nature as would entitle him to a mistrial.” Blackwell v. State, 44 So.2d 409, 410 (Miss. 1950). A contemporaneous motion for a mistrial “is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance.” Knight v. State, 751 So.2d 1144, 1154 (¶ 26) (Miss.Ct.App.1999). We find Smith’s failure to timely request a mistrial or curative instruction is a procedural bar to our review of the issue. See, e.g., Randall v. State, 806 So.2d 185, 213 (¶ 69) (Miss.2001); Logan v. State, 773 So.2d 338, 349 (¶¶ 43-46) (Miss.2000); see also Collins v. State, 81 So.3d 1174, 1179 (¶13) (Miss.Ct.App.2011) (rehearing denied Nov. 29, 2011) (citing Parker v. State, 20 So.3d 702, 707-08 (¶ 23) (Miss.Ct.App.2009)).[1] Still we address the merits.
¶ 10. The Fifth Amendment to the United States Constitution provides: “No person ... shall be compelled in any criminal case to be a witness against himself[.]” The Fourteenth Amendment incorporates this right to the states. Chamberlin v. State, 989 So.2d 320, 332 (¶ 35) (Miss. 2008). The applicable provision in the Mississippi Constitution essentially mirrors the federal right. It states: “In all criminal prosecutions the accused ... shall not be compelled to give evidence against himself[.]” Miss. Const. art. 3, § 26.
¶ 11. The United States Supreme Court has held that a criminal defendant’s post-Miranda silence may not be used by the government to impeach the defendant’s exculpatory testimony. See Doyle v. Ohio, 426 U.S. 610, 611, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Because it is implicit in Miranda warnings “that silence will carry no penalty,” it would be fundamen *127 tally unfair to allow a defendant’s post-arrest silence to be used to impeach his subsequent trial testimony. Id. at 618, 96 S.Ct. 2240.[2]
¶ 12. It is “improper and ordinarily, reversible error to comment on the accused’s post-Miranda silence.” Emery v. State, 869 So.2d 405, 408-09 (¶ 17) (Miss.2004) (quoting Quick v. State, 569 So.2d 1197, 1199 (Miss.1990)). But the mere mention of a defendant’s refusal to give a statement does not, in all instances, require reversal. See Gossett v. State, 660 So.2d 1285, 1291 (Miss.1995) (finding harmless-error analysis applies to an officer’s comment on a defendant’s post-Miranda silence). Instead, we review such comments “on an individual basis.” Birkhead v. State, 57 So.3d 1223, 1238 (¶ 53) (Miss.2011). The proper test for determining if a comment on a defendant’s post-Miranda silence amounts to reversible error is “whether ... the natural and probable éffect of the statement is to create an unjust prejudice against the accused [resulting] in a decision influenced by prejudice.” Gunn v. State, 56 So.3d 568, 571 (¶ 14) (Miss.2011) (internal quotations omitted).
¶ 13. We do not find the natural and probable effect of Officer Daniels’s comment was to unjustly prejudice Smith. It does not appear the prosecutor intentionally elicited this comment, as it was not directly responsive to the prosecutor’s question. The challenged testimony, while legally improper, appears to be the officer’s mere recitation of the facts about his contact with Smith. We further note this comment was the sole reference, over the course of Smith’s trial, to his post-Miranda silence. The prosecutor did not suggest to the jury that Smith was guilty because he exercised his right to remain silent. Nor did the State use Smith’s silence to impeach his testimony. The procedural bar aside, we find the lone unsolicited reference to Smith’s post-Miranda silence does not warrant reversal.
B. Closing Argument
¶ 14. Smith next claims the prosecutor’s closing argument (1) impermissibly referenced his right to remain silent and (2) shifted the burden of proof from the State to the defense.
¶ 15. We find these arguments are similarly procedurally barred because Smith failed to raise a specific and contemporaneous objection during closing arguments. See, e.g., Swington v. State, 742 So.2d 1106, 1112 (¶ 14) (Miss.1999). A separate but equally restrictive bar applies because he also failed to timely request a mistrial or curative instruction. See Randall, 806 So.2d at 213 (¶ 69); Logan, 773 So.2d at 349 (¶¶ 43-46); Collins, 81 So.3d at 1179 (¶ 13) (citing Parker, 20 So.3d at 707-08 (¶ 23)).
¶ 16. After the jury had been excused to begin deliberations, defense counsel challenged the State’s allegedly impermissible references to Smith’s decision not to testify about certain matters at trial. Soon after, he requested a mistrial claiming the State had shifted the burden of proof. Our supreme court has held “a motion for mistrial after the jury has retired to consider its verdict comes too late.” Williams v. State, 684 So.2d 1179, 1203 (Miss.1996). Thus, in raising these arguments after the jury had begun deliberating, Smith failed to preserve these ob *128 jections. See also Collins, 81 So.3d at 1178-79 (¶¶ 12-13) (citing Parker, 20 So.3d at 707-08 (¶ 23)).
¶ 17. Though his untimely request for a mistrial serves as a procedural bar, our review reveals Smith’s asserted challenge at trial differs from the ground he now advances on appeal. His objection at trial dealt with the State’s mention of matters Smith elected to avoid while testifying. Yet on appeal, he latches to a different ground, arguing the State impermissibly commented, during its closing argument, on his pretrial exercise of his right to remain silent.
¶ 18. The record shows the State made no reference during closing arguments to Smith’s pretrial silence. Rather, the prosecutor’s closing focused on Smith’s trial testimony and the fact that it did not square with other evidence. Such arguments have been deemed permissible. See Jordan v. State, 464 So.2d 475, 482 (Miss.1985)[3] (quoting Calloway v. Wainwright, 409 F.2d 59, 65 (5th Cir.1968)) (“[Wjhen a defendant voluntarily testifies to the merits, and not just upon a purely collateral matter, the prosecutor may comment upon the defendant’s failure to deny or explain incriminating facts already in evidence.”). And though the issue was not preserved, any perceived impropriety in the State’s argument concerning its burden of proof was cured by the jury instructions. See Houston v. State, 887 So.2d 808, 814 (¶ 22) (Miss.Ct.App.2004). The trial judge properly explained the beyond-a-reasonable-doubt standard. And the jury was admonished to render its verdict based on the evidence, which they were instructed does not include “[arguments, statements, and remarks of counsel.” We must presume that the jury heeded this clear directive. See, e.g., Clark v. State, 40 So.3d 531, 539 (¶ 16) (Miss.2010) (“Juries are presumed to follow the instructions given to them by the court.”).
¶ 19. We find this issue both procedurally barred and without merit.
II. “Green Leafy Substance”
¶ 20. Smith next claims the trial court’s admission of evidence of a “green leafy substance” recovered from his vehicle violates Rules 901 and 404(b) of the Mississippi Rules of Evidence.
A. Procedural Issues
¶ 21. Though Smith raised his Rule 404(b) argument in the trial court, the State contends this issue is procedurally barred because he failed to re-assert it in his motion for new trial. We disagree. It is true that certain errors — such as an argument that the verdict is against the weight of the evidence — must be raised in a motion for new trial to preserve the issue for appeal. Hughey v. State, 729 So.2d 828, 830 (¶ 6) (Miss.Ct.App.1998) (citing Jackson v. State, 423 So.2d 129, 131 (Miss. 1982)). But a party need not “make a motion for a new trial grounded upon errors shown in the official ... record.” Melton v. State, 723 So.2d 1156, 1159 (¶ 14) (Miss.1998). Because Smith raised Rule 404(b) in a motion in limine, which the trial court denied, we consider this issue on the merits.
B. Rule 404(b)
¶ 22. We review the trial court’s admission or exclusion of evidence for an abuse of discretion. Terrell v. State, 952 So.2d 998, 1005 (¶ 31) (Miss.Ct.App.2006). Under Mississippi Rule of Evidence 404(b):
*129 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Rule 404(b) “prevent[s] the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged.” White v. State, 842 So.2d 565, 573 (¶ 24) (Miss.2003). But the rule permits admission of evidence of other crimes, wrongs, or acts for other relevant purposes.
¶ 23. For a judge to admit evidence under Rule 404(b): (1) the evidence must “be relevant to prove a material issue other than the defendant’s character,” and (2) “the probative value of the evidence must outweigh the prejudicial effect.” Davis v. State, 40 So.3d 525, 530 (¶ 16) (Miss.2010). This second prong implicates Mississippi Rule of Evidence 403 — “the ultimate filter through which all otherwise admissible evidence must pass.” Davis, 40 So.3d at 530 (¶ 16).
¶ 24. Smith filed a motion in limine, arguing admission of evidence of marijuana seized from his vehicle violated Rule 404(b). Though the State did not file a written response, it argued during the pretrial motion hearing on the day of the trial that the evidence fell within an exception to Rule 404(b) to show motive. The State also contended the evidence was necessary to depict the “complete story” of the armed robbery.
¶ 25. The trial judge apparently misinterpreted the nature of the 404(b) issue. Instead, he seemed primarily concerned about the substance being authenticated as marijuana. He deferred ruling on the admissibility of the evidence, instructing:
[T]he defendant states that there is indication that witnesses may say the defendant was in possession of marijuana. The court finds that that will not be admissible unless there is someone that will give testimony that the substance was indeed marijuana that was found in the automobile. Otherwise, it would be hearsay and it would not be admissible unless the substance was indeed tested and determined to be marijuana.
Later, Officer Charles Taylor testified outside the presence of the jury that he was familiar with certain controlled substances from his experience in law enforcement. Based on his experience, he believed the substance seized from Smith’s vehicle “appear[ed] to be marijuana.” But he admitted the substance had not been chemically tested to verify it was marijuana.
¶ 26. Following Officer Taylor’s testimony, the trial court ruled the evidence concerning the green-leafy substance was admissible, finding:
[T]he witness ... can give testimony as to any and all items that he observed .... [T]he defendant will be allowed to cross-examine him as to what he collected and observed. So the green leafy substance, the witness can give testimony in his opinion what he believes it to be; and, likewise the defendant can cross-examine him regarding that opinion.
While the State and defense both cited Rule 404(b), the judge did not mention Rule 404(b) in his ruling. Officer Taylor then testified in the jury’s presence that he had seized “five packs of green vegetable material” from Smith’s vehicle. He testified the substance “appear[ed] to be marijuana.” The record reveals the physical substance was admitted into evidence. On cross-examination, Officer Taylor admitted he was unsure whether Smith had been *130 charged with possessing marijuana. He also acknowledged the substance had not been tested.
¶ 27. Our supreme court has held that “[p]roof of another crime is admissible ... where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged[.]” Mack v. State, 650 So.2d 1289, 1311 (Miss.1994). Under certain circumstances, evidence of a defendant’s drug activity is relevant and admissible to show motive for a robbery. Watts v. State, 717 So.2d 314, 322 (¶22) (Miss.1998) (citing Mack, 650 So.2d at 1313). But there must be a “close connection” showing that the defendant’s “specific monetary objective” for committing the robbery is to finance drug activity. Id. at 323 (¶ 23). There are also other circumstances, such as a robbery from a drug distributor or purchaser, that may support admission of other-acts evidence. In Mack, a capital murder case, the supreme court found no error in the trial court’s admission of other-crimes evidence that the defendant had purchased and smoked crack cocaine. Mack, 650 So.2d at 1313. The Mack court found it “clear” from the evidence that the defendant had robbed the victim “because he needed money [to purchase] cocaine.” Id.
¶ 28. Here, the State’s proffered reason for admission of the drug evidence was to show Smith’s motive for committing the robbery. But the trial judge apparently failed to recognize the nature of the State’s request and did not perform the two-prong 404(b) inquiry. And inexplicably, after the evidence was admitted, the State apparently abandoned this theory. Instead, both sides haggled over whether the substance was indeed marijuana. The State presented no evidence that Smith robbed the gas station for money to purchase drugs, nor did it even mention this purported motive to the jury during closing arguments.
¶ 29. Smith relies on the supreme court’s reversal of a drug-distribution conviction in Spraggins v. State, 606 So.2d 592, 594-96 (Miss.1992), claiming that the improper Rule 404(b) admission requires reversal. In Spraggins, the defendant was charged with selling cocaine. The jury heard numerous improper references to his involvement in other drug-related crimes and acts unrelated to charged offense. The jury also heard Spraggins had been previously convicted of a drug offense and had also been arrested on an unrelated drug charge. And Spraggins’s testimony was thoroughly impeached with the improper Rule 404(b) evidence. We acknowledge the supreme court’s reversal in Spraggins, based on improper admission “of a conviction, a prior arrest, and other bad acts,” id. at 598, but find the facts before us differ.
¶ 30. We find the facts here more akin to those confronted by our supreme court in Waits. In Watts, the supreme court found error in a trial court’s admission of evidence that the defendant used money stolen from a homicide victim to purchase crack cocaine. Watts, 717 So.2d at 323 (¶ 23). On appeal, Watts’s challenged the admission of the drug evidence, arguing it prejudiced his case. The supreme court found “there was no evidence of a ‘close connection of a specific monetary objective’ to rob and murder ... in order ... to obtain money to purchase crack cocaine.” Id. The supreme court also acknowledged the trial judge’s failure to conduct a Rule 403 balancing test to weigh the probative value against the prejudicial nature of the cocaine evidence. Thus, it was error to admit the drug evidence. However, due to the overwhelming evidence of Watts’s guilt, the supreme court found the Rule 404(b) violation was harm *131 less error. Id. at (¶ 24); see also United States v. Sausedo, 24 F.3d 97, 98-99 (10th Cir.1994) (finding admission of cocaine seized from the defendant’s person at the time of arrest constituted harmless error, where the defendant was convicted of possessing marijuana with intent to distribute and using a firearm during a drug trafficking crime).
¶ 31. We are faced with a similar predicament. We cannot speculate that Smith’s motive for committing robbery was to finance drug activity, where the State offered no proof showing that to be the case. Therefore, we conclude the trial judge erred in admitting evidence concerning the green-leafy substance seized from Smith’s Yukon. Because we find error in the admission of the substance, we need not address Smith’s Rule 901 argument. But our inquiry does not end here. Like the supreme court in Watts, we must also consider whether the admission of drug evidence affected a substantial right requiring reversal, or if in light of overwhelming evidence of Smith’s guilt, it may be deemed harmless error. See also Webster v. State, 754 So.2d 1232, 1240 (¶ 21) (Miss.2000) (citing Baldwin v. State, 732 So.2d 236 (Miss.1999); Carter v. State, 722 So.2d 1258 (Miss.1998)) (“[H]armless error analysis applies to questions of the admissibility of evidence pursuant to [Rule] 404(b).”).
¶ 32. The supreme court has refused to reverse based on an improper admission under Rule 404(b) “[w]here the prejudice from [the] erroneous admission ... dims in comparison to other overwhelming evidence[.]” Carter, 722 So.2d at 1261-62 (¶¶ 13-14) (citing Holland v. State, 587 So.2d 848, 864 (Miss.1991)) (finding evidence of defendant engaging in a prior “shoot-out” was harmless error in a murder trial); see also Caldwell v. State, 6 So.3d 1076, 1079 (¶ 9) (Miss.2009) (“Erroneously admitted evidence is harmless when ‘the same result would have been reached had error not existed.’ ”).
¶ 33. Here, the store clerk, Gordon, unequivocally identified Smith as the armed robber. She testified, consistent with her police statement, that she had seen the armed robber leave in a vehicle with a personalized license plate, reading “TY ROSE.” Gordon also identified Smith from a photo lineup. Though Smith denied he had robbed the gas station, which he claimed he had never visited, he admitted he is sometimes called “Ty.” And more importantly, he admitted the Yukon bearing the personalized plate that Gordon had described was his. Further, when authorities arrived at his home, Smith barricaded himself inside and refused to come out. Jurors heard evidence that a SWAT team engaged in a three-hour standoff to remove him. Officers also recovered Black & Mild cigars from his vehicle — the same brand of cigars Gordon testified Smith had stolen from the convenience store.
¶ 34. Considering similar erroneous admissions of other-acts evidence, the supreme court has found harmless error in an improper Rule 404(b) admission. Carter, 722 So.2d at 1260-62 (¶¶4, 13-14) (admission of evidence in a murder trial of a prior “shoot-out” was harmless due to convincing eyewitness testimony, despite defendant testifying and denying the eyewitness’s allegations). Although we find the green-leafy substance was erroneously admitted, the eyewitness’s testimony was clear, detailed, consistent with her statement to investigators, and corroborated by other evidence. Several of Smith’s own admissions were also highly condemning evidence. Under the specific facts of this particular case, we find the State’s proof sufficient to render harmless the trial court’s erroneous admission of the substance found in Smith’s vehicle.
*132 III. Batson
¶ 35. Smith, an African American male, alleges the State violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) by exercising its peremptory challenges in a discriminatory manner. “This Court reviews a trial court’s ruling on a Batson challenge with great deference and will not overturn the trial court’s ruling unless it is clearly erroneous or against the overwhelming weight of the evidence.” See, e.g., Wilson v. State, 72 So.3d 1145, 1153 (¶ 18) (Miss.Ct.App.2011).
¶ 36. The record reveals both sides made Batson objections during voir dire. The State first raised a so-called “reverse Batson challenge,” alleging the defense had struck Caucasian venire members solely based on their race. The trial judge found the State had not yet shown the defense had excluded white venire members in a discriminatory manner. Soon after, defense counsel raised a Batson challenge, pointing to the State’s use of its first seven peremptory challenges to strike black venire members. .The State responded: “We tendered some [African Americans] as well as struck some. There is no race reason with it.” The prosecutor also noted the venire members were predominantly African American; thus, it was “almost impossible not to strike some of the African American jurors.” The trial judge denied the Batson challenge. Later, the State again raised Batson, advising the judge that Smith had stricken every white venire member on the panel. Observing the State had “struck African American jurors as well,” the court denied the State’s reverse-Batson claim.
¶ 37. The Equal Protection Clause of the Fourteenth Amendment forbids the State from exercising peremptory challenges based solely on race. Johnson v. State, 529 So.2d 577, 583 (Miss.1988) (citing Batson, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69). A three-step analysis applies to Batson challenges:
(1) the defendant must make out a pri-ma facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;
(2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and
(3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination,
Pruitt v. State, 986 So.2d 940, 942-43 (¶ 8) (Miss.2008) (citing Johnson v. Cal., 545 U.S. 162, 168, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005)). The ultimate “burden of persuasion rests with, and never shifts from, the opponent of the strike.” Johnson, 545 U.S. at 171, 125 S.Ct. 2410 (citations and quotations omitted). “[A] defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.” Id. at 170, 125 S.Ct. 2410. If the defendant fails to make out a prima facie case showing a discriminatory purpose, the inquiry ends. See Pruitt, 986 So.2d at 942-43 (¶ 8); Scott v. State, 981 So.2d 964, 968 (¶ 11) (Miss. 2008).
¶ 38. Smith claims the trial court erred in “failing to follow through the Batson process.” In response, the State argues Smith’s Batson claim necessarily fails because all jurors selected were African Americans — the same race as Smith. Although the record does not indicate the racial composition of the jury, Smith does not dispute the State’s allegation that the seated jury was solely comprised of African Americans.
*133 ¶ 39. The supreme court has recently held “that exercising seven peremptory strikes against African-Americans [ (the same of number of strikes at issue here) ], standing alone, absent any other facts or circumstances ... fails to establish a prima facie showing that race was the criteria for the exercise of the peremptory challenge.” Strickland v. State, 980 So.2d 908, 917 (¶ 12) (Miss.2008); see also Jackson v. State, 672 So.2d 468, 479 (Miss. 1996). And in Hansen, the supreme court rejected an appellant’s Batson challenges where the record did not include the race of the jurors. Hansen v. State, 592 So.2d 114, 127 (Miss.1991). The supreme court noted its longstanding requirements that it “must decide each case by the facts shown in the record, not assertions in the brief,” and that the burden is on the appellant to make sure “the record contains sufficient evidence to support his assignments of error on appeal.’ ” Id. Here, Smith’s counsel had the burden to ensure the record indicated the facts supporting the State’s alleged discriminatory use of its peremptory strikes, and to show the ultimate racial composition of the jury. Scott, 981 So.2d at 968-69 (¶¶ 11, 15) (explaining that a properly raised Batson objection must be supported by specific facts constituting a prima facie case of discriminatory use of peremptory strikes). Without sufficient facts and record evidence to assess the alleged pretextual nature of the State’s challenges, we cannot find the trial judge in error for striking the challenged jurors.
IV. Jury Instruction
¶ 40. Our standard for reviewing jury instructions is well established. A criminal defendant is entitled to jury instructions that present his theory of the case even if the supporting evidence “is weak, inconsistent, or of doubtful credibility.” Banyard v. State, 47 So.3d 676, 682 (¶ 17) (Miss.2010) (citing Ellis v. State, 778 So.2d 114, 118 (¶ 15) (Miss.2000)). But a defendant’s right to jury instructions presenting his theory of the case is not absolute. Harris v. State, 861 So.2d 1003, 1012 (¶ 18) (Miss.2003). “[T]he court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id. at 1012-13 (¶ 18); Brown v. State, 39 So.3d 890, 898 (¶ 27) (Miss.2010). An appellate court does not read jury instructions in isolation. Instead, we read them as a whole with no single instruction taken out of context. Rushing v. State, 911 So.2d 526, 537 (¶ 24) (Miss.2005).
¶ 41. Smith argues the jury was not properly instructed on his defense of mis-identification. He alleges his proposed jury instruction D-6, which the trial court refused, was a “more complete” instruction than instruction S-3 — the instruction given on eyewitness identification. Instruction S-3 reads:
The burden is on the State to prove beyond a reasonable doubt that the offense was committed and that the defendant was the person who committed it. You have heard the evidence regarding the identification of the defendant as the person who committed the crime. In this connection, you should consider the witness’s opportunity to observe the criminal act and the person committing it, including the length of time the witness had to observe the person committing the crime, the witness’s state of mind, and any other circumstances surrounding the event. You should also consider the witness’s certainty or lack of certainty, the accuracy of any prior description, and the witness’s credibility or lack of credibility, as well as any other factor surrounding the identification. You have heard evidence that pri- or to this trial, the witness, Patricia Gordon, identified the defendant, Anto *134 nio Smith, by viewing a photographic spread which contained his photograph.
The identification of the defendant by a single eyewitness, as the person who committed the crime, if believed beyond a reasonable doubt, can be enough evidence to convict the defendant.
It is for you to determine the reliability of any identification and give it the weight you believe it deserves.
Instruction D-6 proposed the following:
The Court instructs the jury that one of the issues in this case is the identification of ANTONIA TYRONE SMITH as the person who committed the crime. The State has the burden of proving identity beyond a reasonable doubt. Identification testimony is an expression of belief or impression by the witness, and its value may depend upon your consideration of several factors. Some of the factors which you may consider are:
1) The witness’s capacity and opportunity to observe the offender. This include[s], among other things, the length of time available for observation, the distance from which the witness observed, the lighting, and whether the person who committed the crime was a prior acquaintance of the witness;
2) The degree of certainty expressed by the witness regarding the identification and the circumstances under which it was made, including whether it is the product of the witness’s own recollection;
3) The occasion, if any, on which the witness failed to make an identification of ANTONIA TYRONE SMITH or made an identification that was inconsistent with the identification at trial; and
4) The occasions, if any, on which the witness made an identification that was consistent with the identification at the trial, and the circumstances surrounding such identification.
The State has the burden of proving every element of the crime charged, and this burden specifically include[s] the identity of ANTONIA TYRONE SMITH as the person who committed the crime for which he is on trial. If after considering the identification testimony in light of all the proof you have a reasonable doubt that ANTONIA TYRONE SMITH is the person who committed the crime, you must find ANTONIA TYRONE SMITH not guilty.
¶ 42. Comparing the two instructions, we do not see any information in the refused instruction D-6 that was not fairly covered by S-3. Both instruct the jury that the State is required to prove identity beyond a reasonable doubt. And each contains a list of factors for assessing whether the State has done so. There is no particular factor in instruction D-6 that is not covered by instruction S-3 or encompassed within one of the factors outlined in S-3. “[T]rial judges are not required to grant repetitious instructions.” Davis v. State, 568 So.2d 277, 280 (Miss.1990) (quotations omitted). Further, the supreme court has held a proper identification instruction need not include a detailed list of factors. See id. at 279-81. Because the jury was properly instructed on misidentification, and instruction D-6 was cumulative of the instruction given, we find no error on this issue.
¶ 43. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FIFTEEN YEARS, WITH FIVE YEARS SUSPENDED AND TEN YEARS TO SERVE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF *135 CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. We note that defense counsel's failure to immediately specify the ground for the objection did not waive this issue because the ground for the objection is obvious. See M.R.E. 103(a)(1) (stating specific objection only required “if the specific ground was not apparent from the context[.]”); see also Murphy v. State, 453 So.2d 1290 (Miss.1984).

. The Doyle rule is not without exception. Doyle itself provided: "[T]he fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest.” Doyle, 426 U.S. at 619 n. 11, 96 S.Ct. 2240.

. We note that Jordan was vacated on other grounds by Jordan v. Mississippi, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986) and abrogated on other grounds by Willie v. State, 585 So.2d 660 (Miss.1991), overruled by King v. State, 784 So.2d 884 (Miss.2001).