# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00978-COA

THEODOSIUS M. TORREY A/K/A                                              APPELLANT
THEODOSIUS MAURICE TORREY A/K/A T.M.
TORREY A/K/A "LOCO" A/K/A THEODOSIUS
M. TORREY, SR. A/K/A MAURICE TORREY
A/K/A THEODODIUS MAURICE TORREY

v.

STATE OF MISSISSIPPI                                                     APPELLEE

DATE OF JUDGMENT:            05/22/2013
TRIAL JUDGE:                 HON. DALE HARKEY
COURT FROM WHICH APPEALED:   JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      ROSS PARKER SIMONS
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:           ANTHONY N. LAWRENCE III
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     CONVICTED OF AGGRAVATED ASSAULT
                             AND SENTENCED AS A HABITUAL
                             OFFENDER TO TWENTY YEARS IN THE
                             CUSTODY OF THE MISSISSIPPI
                             DEPARTMENT OF CORRECTIONS
                             WITHOUT ELIGIBILITY FOR PAROLE OR
                             EARLY RELEASE
DISPOSITION:                 AFFIRMED - 02/28/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES, ISHEE AND CARLTON, JJ.

### ISHEE, J., FOR THE COURT:

¶1.     In January 2010, Theodosius Maurice Torrey was indicted on one count of aggravated

assault, in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Supp. 2009).

Torrey was tried by a jury in the Jackson County Circuit Court, and was found guilty. In May

2013, Torrey was sentenced, as a habitual offender, to serve twenty years in the custody of the Mississippi Department of Corrections ("MDOC"). Torrey filed a motion for a judgment notwithstanding the verdict ("JNOV") or, in the alternative, a new trial, which he later amended. The circuit court denied Torrey's motion, and he appeals. Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2. Torrey was indicted on one count of aggravated assault in the Jackson County Circuit Court. The indictment stemmed from a physical altercation between Torrey and Rodney Norman on April 1, 2009. The altercation left Norman permanently disabled, confined to a wheelchair, and with significant limitations of his bodily functions due to severe trauma to his head and face. Torrey was arrested that same day, and interviewed by Moss Point Police Department Officer Joseph Savage and Detective Joycelyn Craig; the interview was audio-recorded. Torrey was read his *Miranda*[1] rights at the outset of the interview, and subsequently waived them. Torrey alleges that he invoked his right to counsel during this interview. Nonetheless, while Torrey initially denied participating in the altercation with Norman, he eventually told officers that it was he who fought Norman.

¶3. On December 12, 2012, the State moved to amend its indictment, and prosecute Torrey as a habitual offender. The circuit court granted the amendment, and entered an order to that effect on February 28, 2013. Torrey eventually proceeded to trial on May 20, 2013. Prior to trial, however, Torrey had hired and fired four separate attorneys, with his fifth

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

attorney nowhere to be found and having done no work on Torrey's case; as such, the circuit court ordered that Torrey proceed to trial, as scheduled, with his fourth attorney, Brian Alexander. Upon conclusion of the trial, Torrey was convicted by a jury of aggravated assault, in violation of Mississippi Code Annotated section 97-3-7(2)(a).

¶4. On May 22, 2013, Torrey was sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015), to serve twenty years in MDOC custody, without the possibility of parole or early release. Torrey filed a motion for a JNOV or, in the alternative, a new trial; Torrey later amended his motion. Following a hearing on all the issues presented by Torrey in his posttrial motions, the circuit court denied Torrey relief. Aggrieved, Torrey now appeals.

¶5. On appeal, Torrey raises the following issues: (1) the circuit court abused its discretion by requiring Torrey to proceed to trial with an unprepared attorney whom Torrey had discharged; (2) the circuit judge abused his discretion in not recusing himself from Torrey's case; (3) the circuit court committed manifest error in denying Torrey's motion to suppress his recorded statement to Moss Point police officers; (4) Torrey's trial counsel rendered constitutionally ineffective assistance of counsel; (5) the circuit court abused its discretion in denying Torrey's jury instruction for the lesser-included offense of simple assault; and (6) the process by which Torrey was found to be a habitual offender violated his right to due process and fair notice. Finding no error, we affirm.

**DISCUSSION**

**I.      The circuit court did not abuse its discretion by ordering Torrey to trial with Brian Alexander as his counsel.**

3

¶6.    Because both of the issues Torrey raises involving his trial counsel are interrelated, we will address them together. To begin, Torrey asserts that the circuit court abused its discretion in requiring Torrey go to trial with Brian Alexander as his attorney. In addition, Torrey argues that because Alexander was unprepared, he provided ineffective assistance of counsel.

### A.    Alexander as Trial Counsel

¶7.    At the time of Torrey's scheduled trial date of May 20, 2013, Alexander had previously filed two motions to continue Torrey's case, in both February and March 2013; the circuit court granted both of these motions. Four days prior to Torrey's May 20 trial date, however, Alexander filed a motion to withdraw as counsel. The motion was not presented to the circuit court until May 20, 2013, when the court called Torrey's case for trial. Up to this point in the proceedings, the procedural history of Torrey's case was lengthy—Torrey had previously had three other attorneys, with Alexander being his fourth, and Torrey's case had been on the circuit court's docket for nearly four years, encompassing up to eleven separate continuances.

¶8.    On the day of trial, Alexander was prepared to argue only his motion to withdraw and his third motion to continue. While the State announced that it was ready for trial, Alexander said that he was not, stating that Torrey had not honored his respective obligations to Alexander, that Torrey had hired an additional attorney to represent him, and that Torrey did not object to Alexander's withdrawal. Torrey explained to the court that he had fired Alexander, and hired his fifth overall attorney, Curt Crowley. Torrey further stated that he

4

had paid Crowley $5,000 to represent him; however, Crowley had not communicated with Torrey since his hiring, had failed to enter an appearance, had failed to file any documents, and had failed to correspond with Alexander regarding Torrey's case. Torrey further acknowledged that he had fired Alexander, and hired Crowley, after the circuit court's final continuance was granted. As such, the circuit court denied Alexander's motions to withdraw and/or continue the case, ordering the parties to proceed to trial that same day.

¶9.    "The decision to grant or deny a continuance is left to the sound discretion of the trial judge." *Harris v. State*, 37 So. 3d 1237, 1241 (¶16) (Miss. Ct. App. 2010) (citing *Stack v. State*, 860 So. 2d 687, 691 (¶7) (Miss. 2003)). "This Court will not reverse a trial court's decision to deny a motion for continuance unless the decision appears to have resulted in manifest injustice." *Id.* "The burden of showing a manifest injustice is not satisfied by conclusory arguments alone; rather the defendant is required to show concrete facts that demonstrate the particular prejudice to the defense." *Stack*, 860 So. 2d at 691-92 (¶7).

¶10.   On appeal, as he did at trial, Torrey argues that the circuit court should not have forced him to proceed to trial with Alexander as his attorney because Alexander arrived at court expecting his withdrawal to be granted, or at least to be granted another continuance. Torrey further asserts that the circuit court erred by failing to consider the option of compelling Crowley to appear in court as Torrey's counsel, after a time in which Crowley "would have been prepared to proceed." As such, Torrey argues that he did not receive a fair trial and, thus, should be granted a new trial. We disagree.

¶11.   From the record before us, Torrey has not shown concrete facts evidencing his defense

was prejudiced to the point of constituting manifest injustice. In denying Torrey's motion for a JNOV or new trial, the circuit court specifically found that "Crowley failed to enter an appearance, failed to file any documents, and failed to communicate his existence in any matter with the Court." Moreover, Crowley's own testimony during the posttrial hearings revealed that he had done no work on the case, and intentionally avoided being served to make an appearance before the court. Whether to compel Crowley to represent Torrey, however, was within the sound discretion of the circuit court. Reasoning that Torrey would have likely fired Crowley—Torrey's fifth attorney—due to Crowley's lack of effort and communication, the circuit court chose to end the constant delays, and proceed to trial on May 20, 2013, as intended.

¶12. The circuit court did not abuse its discretion either in enforcing the trial date or in denying Alexander's motions to withdraw or continue the case. Precedent set forth by the Mississippi Supreme Court illustrates that other defendants have been forced to trial with attorneys having far less time to prepare for trial than Alexander. *See Stack*, 860 So. 2d at 692 (¶9) (citing *Hughey v. State*, 512 So. 2d 4, 6 (Miss. 1987) (defendant caused to go to trial on day of arraignment and nine days after appointment of counsel); *Cole v. State*, 405 So. 2d 910, 911-12 (Miss. 1981) (counsel had seven days to prepare for murder trial); *Speagle v. State*, 390 So. 2d 990, 992 (Miss. 1980) (new counsel forced to prepare for incest trial in one day); *Shaw v. State*, 378 So. 2d 631, 633-34 (Miss. 1979) (defense counsel afforded eight days to prepare); *Garner v. State*, 202 Miss. 21, 30 So. 2d 413, 414 (1947) (seven-day preparation time for capital murder trial)). Alexander filed his first appearance in the case

6

on February 8, 2013, and began preparing for trial shortly thereafter. Thus, Alexander had over three months from his initial appearance to prepare for trial set on May 20, 2013.

¶13. As this Court will not reverse the denial of a motion to continue absent a showing of manifest injustice by the defendant, we find no reversible error in the present case. *See Harris*, 37 So. 3d at 1241 (¶16). As this Court held in the analogous case of *Feazell v. State*, 750 So. 2d 1286, 1288 (¶8) (Miss. Ct. App. 2000), "[t]o find error would require us to conclude that the trial judge is at the mercy of the manipulations of a defendant. We do not so find." Because we decline to address Torrey's ineffective-assistance-of-counsel claim for the reasons stated below, we find the circuit court did not abuse its discretion by requiring Torrey proceed to trial with Alexander as his counsel. This issue is without merit.

## B. Assistance of Trial Counsel

¶14. In this issue, Torrey claims he received ineffective assistance from his trial counsel because Alexander was unprepared for trial, failed to conduct adequate pretrial investigations and interviews, conducted "woefully inadequate" voir dire, confused evidentiary rules, and failed to make various objections throughout the trial.

¶15. Rule 22(b) of the Mississippi Rules of Appellate Procedure provides:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

And the supreme court has held:

> It is unusual for [an appellate c]ourt to consider a claim of ineffective

7

assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. [An appellate c]ourt will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (internal citations and quotations omitted).

¶16. Upon review, the record does not affirmatively indicate that Torrey received ineffective assistance of constitutional dimensions. Nor have the parties stipulated that the record is adequate to allow us to make findings without considering a trial judge's findings of fact. As a result, we decline to address this issue. Thus, we dismiss Torrey's claims under this heading without prejudice to his ability to raise them in postconviction proceedings, if he chooses to do so.

**II.     The circuit judge did not abuse his discretion in refusing to recuse himself from Torrey's case.**

¶17.    Torrey argues that the circuit judge should have recused himself from Torrey's case because he was involved in past cases related to Torrey when serving as the district attorney for Jackson, George, and Greene Counties. On appeal, "the standard of review to which appellate courts are bound on the issue of recusal is manifest error." *West v. State*, 131 So. 3d 583, 586 (¶10) (Miss. Ct. App. 2013). "In determining whether a judge should have recused himself, this Court uses an objective test: 'A judge is required to disqualify himself

8

if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.'" *Shumpert v. State*, 983 So. 2d 1074, 1078 (¶14) (Miss. Ct. App. 2008). "The challenger has to overcome the presumption 'that a judge, sworn to administer impartial justice, is qualified and unbiased.' This presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption." *Id.*

¶18. Furthermore, Uniform Rule of Circuit and County Court 1.15 states in pertinent part:

> Any party may move for the recusal of a judge of the circuit or county court if it appears that the judge's impartiality might be questioned by a reasonable person knowing all the circumstances, or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law. *A motion seeking recusal shall be filed with an affidavit of the party or the party's attorney* setting forth the factual basis underlying the asserted grounds for recusal and declaring that the motion is filed in good faith and that the affiant truly believes the facts underlying the grounds stated to be true. *Such motion shall, in the first instance, be filed with the judge who is the subject of the motion within 30 days following notification to the parties of the name of the judge assigned to the case*; or, if it is based upon facts which could not reasonably have been known to the filing party within such time, it shall be filed within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted.

URCCC 1.15 (emphasis added).

¶19. In light of these principles, we find that Torrey is procedurally barred from asserting this claim on appeal as he did not file his motion to recuse in accordance with Rule 1.15. The record reflects that Torrey failed to attach an affidavit from himself or his attorney to his motion, as required by Rule 1.15. In addition, Torrey's motion for recusal was not timely. While it is unclear when Torrey or his attorney became aware that Judge Dale Harkey would be presiding over the case, Judge Harkey signed an order in the case as early as August 6, 2010. Torrey did not file his motion to recuse Judge Harkey until January 12, 2012. Because

9

Torrey's motion to recuse failed to comply with Rule 1.15, he is procedurally barred from asserting this claim. As such, this issue is without merit.

### III. The circuit court did not err in denying Torrey's motion to suppress his recorded statement to Moss Point Police Department investigators.

¶20. Torrey asserts that the circuit court erred in denying his motion to suppress his recorded statement because Torrey requested counsel, but continued to be questioned by Moss Point Police Department investigators. "This Court will reverse a trial court's denial of a motion to suppress only if the ruling is manifest error or contrary to the overwhelming weight of evidence." *Barnes v. State*, 158 So. 3d 1127, 1134 (¶22) (Miss. 2015).

¶21. "If the defendant invokes his right to counsel, the interrogation must cease until an attorney is present." *Barnes v. State*, 30 So. 3d 313, 316 (¶8) (Miss. 2010). "Once a defendant asks for counsel, he cannot be interrogated further until counsel has been made available, 'unless the accused himself initiates further communication, exchanges, or conversations with the police.'" *Id.* at 316-17 (¶8) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). "[T]he applicability of the rigid prophylactic rule of *Edwards* requires courts to first determine whether the accused *actually invoked* his right to counsel." *Id.* at 317 (¶9) (emphasis in original) (internal quotation marks omitted) (quoting *Davis v. United States*, 512 U.S. 452, 458 (1994)). "Determining whether a defendant actually invoked his right to counsel is an objective inquiry." *Id.* "During a suppression hearing, the trial judge sits as the fact[-]finder." *Walker v. State*, 913 So. 2d 198, 224 (¶87) (Miss. 2005).

¶22. In *Barnes*, our supreme court ruled in accordance with precedent set forth by the

10

United States Supreme Court in *Davis*, holding:

> A defendant must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect . . . . If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.

*Barnes*, 30 So. 3d at 317 (¶9) (citing *Davis*, 512 U.S. at 459, 461-62). While our supreme court has since provided guidance on issues related to ambiguous invocations of counsel, Torrey's case does not fall under the purview of this line of cases. Here, we are addressed with an audio-recorded statement, at which the crucial point of the alleged invocation and/or waiver of counsel is arguably *inaudible*. In contrast, our supreme court's most recent precedent on point outlines a framework for ambiguous, though *audible*, statements made by defendants. *See Downey v. State*, 144 So. 3d 146, 151 (¶8) (Miss. 2014) (applying three-part test to determine whether trial judge correctly decided whether to admit or suppress defendant's statements to law-enforcement officers); *compare with Franklin v. State*, 170 So. 3d 481, 490-91 (¶¶30-37) (Miss. 2015) (plurality opinion holding that *Davis* is controlling law, three-part test did not apply, and Mississippi Constitution does not afford greater protection to criminal suspects than U.S. Constitution); *see also Collins v. State*, 172 So. 3d 724, 736-37 (¶¶9-10) (Miss. 2015) (discussing inaudible portions of statement within context of "initiating" conversation with police officials).

¶23.    From the transcript of the interview offered into evidence, the alleged exchange that took place between Officer Savage and Torrey is as follows:

11

J.D. Savage: Okay. So, tell us how—tell us your side. We got his side. I want your side.

Torrey: Okay. I want—I want to call a lawyer and all that, dude, you know what I'm saying? But at the same time, though, ah . . . .

J.D. Savage: Was it something that's . . . .

Torrey: I want to ask you a que—I want—I just want—I just want to ask a question, too. Um, am I charged with anything? I mean, am I gonna be charged?

J.D. Savage: We're trying to get—right now you're being detained.

¶24. At trial, Officer Savage testified that during the course of the interview, Torrey never requested an attorney. Torrey, on the other hand, testified that he did, in fact, invoke his right to counsel, as the interview transcript allegedly indicates. In rebuttal, however, the State contends that the transcript is unreliable during this portion of the interview. The State asserts such on the basis that what exactly Torrey said is a matter of interpretation, as it is not entirely clear when Torrey mentions the word "attorney." Because of this inaudible discrepancy, the audio recording was played at least seven times for the circuit court. After hearing the recording, the circuit court specifically stated that the crucial point of the recording contained "all sorts of static," and that the transcript was considered "helpful, but obviously not conclusive."

¶25. On appeal, Torrey now asserts that the circuit court erred in denying his motion to suppress because the court stated on the record:

I'm going to deny the motion to suppress the statement. I mean, I've heard four pages of [the audio recording] and I don't know what it says, but I'm going to deny it.

12

. . . .

> I haven't read the entire thing, but I am told that there are other occasions during the course of the statement where the defendant does not want an attorney.

Torrey argues the court erred by failing to listen to the entire statement, and the court did "[not] offer any justification for believing what the [S]tate said was in the later part of the transcript it had admittedly not read . . . ." At trial, however, it was stipulated by both the State and Alexander that the court needed only to review the "disputed part of the [recording] concerning . . . Torrey's invocation of his right to counsel." Furthermore, when asked by the court whether the transcript was "accurate later," Alexander stated, "In my view, the transcript's accurate later. That's our position." By stipulating to such, Alexander conceded that on at least three other occasions later in the interview, Torrey stated, "I don't need no lawyer," or, "I don't need no lawyer for nothing." Thus, Torrey's argument in this regard is without merit.

¶26. Next, Torrey seems to assert that "Mr. Torrey's and [Officer Savage]'s testimon[ies] cancel each other out," and thus, the circuit court was not entitled to credit Officer Savage's testimony over Torrey's. This is simply not the law. As the finder of fact during a suppression hearing, it is within the sound discretion of the circuit judge to determine witness credibility—and in the present case—whether Torrey invoked his right to counsel. *See Walker*, 913 So. 2d at 224 (¶87). As such, this argument is likewise without merit.

¶27. Lastly, we address Torrey's contention that the circuit court erred in its ruling by "presuming" that Torrey had waived his right to counsel. As the Supreme Court held in

13

*Miranda*, "[p]resuming a waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything else is not a waiver." *Miranda*, 384 U.S. at 475 (citing *Carnley v. Cochran*, 369 U.S. 506, 516 (1962)). Torrey asserts that the State "present[ed] no proof beyond a reasonable doubt that . . . Torrey waived the right, [and] the trial court—from the lack of evidence—presumed a waiver that did not exist." Again, this argument is also without merit.

¶28. The interview transcript shows that at the outset of the interview, Torrey was properly read his *Miranda* rights, and stated that he understood his rights. Torrey was next asked by Detective Craig if he was "willing to make a statement or answer questions," to which Torrey responded, "Mm-hm." Torrey further acknowledged that he understood his rights, that he had not been made any promises or threatened, nor had he been coerced by Detective Craig or Officer Savage when he initialed and signed an affidavit to that effect. Thus, while the State "bears the burden of proving beyond a reasonable doubt that a statement was given after a valid waiver," the record clearly reflects that the State has satisfied its burden here. *See Collins*, 172 So. 3d at 736 (¶8). We find no merit to this argument.

¶29. Thus, in its order denying Torrey's motion for a JNOV or a new trial, the circuit court held:

> After a full evidentiary hearing, the Court made factual findings adverse to the Defendant as to whether he requested the presence of an attorney. Those findings included the facts, as found by the Court beyond a reasonable doubt, that the officers testified that no request for an attorney was made, and that the transcript of the interview did not accurately record the relevant statements of the Defendant.

14

In light of *Barnes* and *Davis*, the circuit court properly found that Torrey's statement was not an "unambiguous or unequivocal request for counsel," and Detective Craig and Officer Savage were not obligated to stop questioning Torrey. *See Barnes*, 30 So. 3d at 317 (¶9) (citing *Davis*, 512 U.S. at 459, 461-62). Furthermore, we find that at multiple points in the transcript before the alleged invocation of counsel, the transcript was ripe with inaccuracies, further supporting the circuit court's findings regarding the reliability of the transcript. Torrey was properly read his *Miranda* rights, voluntarily waived those rights, and repeatedly stated throughout the interview that he "[did not] need no lawyer." Thus, it is reasonable to assume that Torrey did not invoke his right to counsel as he initially waived that right before the alleged invocation, in addition to doing so on multiple occasions afterward. As such, we do not find any manifest error on the part of the circuit court, and its denial of Torrey's motion to suppress was not against the overwhelming weight of the evidence. Consequently, this issue is without merit.

IV.     **The circuit court did not err by refusing Torrey's requested simple-assault jury instruction.**

¶30.    Torrey argues that the circuit court committed reversible error in its refusal of Torrey's simple-assault jury instruction, D-11. On appeal, this Court "conduct[s] a de novo review of a circuit court's decision that a defendant is not entitled to a lesser-included-offense instruction, as this is a question of law." *Collins v. State*, 81 So. 3d 1174, 1177 (¶9) (Miss. Ct. App. 2011). "[A] lesser-included instruction should be given where the evidence is such that a reasonable jury 'could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense.'" *Bright v. State*, 986 So.

15

2d 1042, 1048 (¶21) (Miss. Ct. App. 2008) (quoting *Monroe v. State*, 515 So. 2d 860, 863 (Miss. 1987) (superceded by rule on other grounds)). This Court must "tak[e] the evidence in the light most favorable to the accused, and consider[] all reasonable inferences which may be drawn in favor of the accused from the evidence . . . ." *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985).

¶31. Torrey was charged with aggravated assault. Mississippi Code Annotated section 97-3-7(1) (Supp. 2009) provides:

> A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Mississippi Code Annotated section 97-3-7(2)(a) (Supp. 2009) provides, in pertinent part:

> A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .

¶32. "Prior Mississippi cases have explained on several occasions that aggravated assault under section 97-3-7(2)(a) and simple assault under 97-3-7(1)(a) are distinguished mainly by the extent of the victim's injury, i.e., whether the victim suffered 'bodily injury' or 'serious bodily injury.'" *Bright*, 986 So. 2d at 1048 (¶24). "Whether 'bodily injury' or 'serious bodily injury' resulted is a question for the jury." *Id.* (citing *Odom v. State*, 767 So. 2d 242, 246 (¶13) (Miss. Ct. App. 2000)). However, "a lesser-included offense instruction should never be granted on the basis of pure speculation." *Collins*, 81 So. 3d at 1177 (¶11).

¶33. The State argues, and we agree, that "no reasonable jury could conclude that

[Norman]'s injuries were less than serious." *Bright*, 986 So. 2d at 1050 (¶30). The aftermath of the altercation between Torrey and Norman left Norman confined to a wheelchair and unable to walk, eat on his own, or communicate. First responders reported that upon arrival, Norman was bleeding from his mouth, nose, and ears. Furthermore, doctors at the hospital where Norman was taken told Officer Savage that Norman's survival was unlikely. Finally, as the State asserts, "[t]he clincher here is the uncontradicted evidence regarding the nature and extent of [the victim's] injuries." *Id.* at 1049 (¶29) (quoting *Harbin v. State*, 478 So. 2d 796, 799 (Miss. 1985)).

¶34. To support his denied jury instruction, Torrey relies upon two responses made by Dr. Lee Kesterson, the State's expert witness. Alexander asked Dr. Kesterson if Norman's injuries could have resulted from another source, such as contact with an automobile while Norman lay in the street, or a fall from a two-and-one-half-foot-tall porch that occurred during the altercation. Dr. Kesterson stated that "it's possible" a car striking Norman could cause the same damage, and that "a ground level fall like that can be a source of significant trauma." We hold Torrey's reliance is unfounded. This is because Torrey never presented any evidence showing Norman was struck by a vehicle, or that any vehicle was involved. Moreover, Torrey did not introduce any evidence supporting the notion that Norman was severely injured after the pair fell from the porch while fighting. On appeal, Torrey, in fact, concedes that "the evidence might have been meager or highly unlikely . . . ."

¶35. Reviewing the relevant portions of the record anew, and viewing the evidence in the light most favorable to Torrey, we find that no reasonable jury could have found Torrey

17

guilty of the lesser-included offense of simple assault. As such, the circuit court did not err in refusing Torrey's simple-assault jury instruction, D-11. This issue is without merit.

**V.    The process by which Torrey was found to be a habitual offender was procedurally proper under *Gowdy v. State*.**

¶36.    Torrey argues on appeal that the amended indictment reflecting his habitual-offender status was "convoluted," and procedurally improper under *Gowdy v. State*, 56 So. 3d 540 (Miss. 2010). Torrey asserts that "[d]ue to the amending order's distance in time from . . . Torrey's sentencing hearing and the lack of notice to . . . Torrey of the February 28, 2013[,] amendment, his sentence as a habitual offender does not pass the due process and fair notice required by *Gowdy*." We find no merit to this assignment of error.

¶37.    In *Gowdy*, the supreme court addressed the procedures for habitual-offender proceedings. The guiding principle derived from *Gowdy* is this: indictments cannot be amended *after* conviction. *Id.* at 544-46 (¶¶15-24). On December 12, 2012, the State submitted its motion to amend to charge Torrey as a habitual offender. The motion specifically listed two previous felony convictions Torrey had received in Jackson County, Mississippi, in the years of 2001 and 2005, respectively. On January 11, 2013, the circuit court heard the motion upon the request of the State. Torrey's counsel at the time, Wendy Martin, stated that she had "no response," and requested "that this [motion] be done closer to trial, the day of trial." On February 28, 2013, the circuit court granted the State's motion, entering an order amending the indictment to charge Torrey as a habitual offender. Torrey's trial did not take place until May 20, 2013—meaning Torrey had notice from December 2012 through May 2013 that the State intended to charge him as a habitual offender. As such,

18

Torrey's case does not violate the procedural guidelines articulated in *Gowdy*, as Torrey had approximately five months' notice before he was to be tried, and ultimately sentenced.

¶38. Finally, Torrey did not raise this issue in his initial or amended motion for a JNOV or new trial. Likewise, a review of the record reveals Torrey did not object at any point regarding the State's intent to amend the indictment for habitual-offender status. As this Court has made clear before, "[w]hen an accused fails to object to the habitual offender issue during the sentencing phase, he is procedurally barred to do so the first time on appeal." *Heidelberg v. State*, 45 So. 3d 730, 732 (¶6) (Miss. Ct. App. 2010). Torrey has no foundation to argue that his procedural rights of due process and fair notice were violated. We find no merit regarding this issue.

## CONCLUSION

¶39. Upon review of the record, we find no merit to any of the issues raised on appeal. Therefore, we affirm the findings of the circuit court.

¶40. **THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR EARLY RELEASE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**