# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00613-COA

**KINDAR ANDRE GREEN A/K/A KINDAR**  
**GREEN**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT: 05/28/2021  
TRIAL JUDGE: HON. CELESTE EMBREY WILSON  
COURT FROM WHICH APPEALED: DESOTO COUNTY CIRCUIT COURT  
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER  
BY: JUSTIN TAYLOR COOK  
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL  
BY: ALLISON ELIZABETH HORNE  
DISTRICT ATTORNEY: ROBERT R. MORRIS  
NATURE OF THE CASE: CRIMINAL - FELONY  
DISPOSITION: AFFIRMED - 01/10/2023  
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. A DeSoto County grand jury indicted Kindar Green for aggravated domestic violence under Mississippi Code Annotated section 97-3-7(4)(a) (Supp. 2016) as a non-violent habitual offender under Mississippi Code Annotated section 99-19-81 (Supp. 2018). The circuit court later granted the State's motion to amend the indictment to charge Green as a violent habitual offender under Mississippi Code Annotated section 99-19-83 (Supp. 2018).

¶2. At trial, the circuit court refused Green's proffered jury instruction for the lesser-included offense of simple domestic violence (Jury Instruction D-IV), finding there was no evidentiary basis for giving the instruction. The jury convicted Green as charged on May 3,

2021, and the court sentenced him to life in the custody of the Mississippi Department of Corrections (MDOC), "to be served without the benefit of parole." Green argued in his motion for a new trial that the court erred in refusing his jury instruction "on the lesser included offense of simple domestic violence." The circuit court denied the motion.

¶3. On appeal, Green re-asserts his claim that the court's refusal to give a lesser-included offense jury instruction was error. Because there was no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶4. Green and his wife Debbie Williford were married for seven years and shared a home in Southaven, Mississippi. On the evening of October 24, 2019, while at home, Green became verbally abusive toward Williford. Upset with Green for his behavior, Williford refused to give Green the keys to their car the next morning. Green responded by jumping on top of Williford and punching her face and head. Williford relented and gave him the keys. Once Green had left for work, Williford called the police. Two officers responded, and Williford went to the police station later that afternoon. She provided a statement about the incident and then went home. Because it was a Friday, the officers explained to Williford that it would likely be Monday before a judge could review her statement.

¶5. Green was home when Williford returned, and the couple went to a casino. Driving home later that evening, Green again became verbally abusive toward Williford. When they arrived home, Williford quietly retreated to the bedroom, but Green followed her and continued the verbal abuse. Williford called 911 but quickly hung up. However, she began

to feel "real unsafe"; so she called 911 again. The 911 dispatcher told her to leave and that an officer was en route. Williford got her purse, keys, and cell phone and walked to the door while still on the phone with 911. Because it was raining heavily, she stayed near the door.

¶6. In the meantime, Green began to look at his cellphone. The couple had a home-security application on their cellphones that recorded activities on their security cameras, which would have shown the officers who had responded earlier that day. According to Williford, Green "immediately . . . just changed." He went to the door where Williford was standing and struck the back of her neck, causing her to fall into the flower bed. Green began punching, kicking, and hitting Williford relentlessly. He was wearing steel-toed boots and "kicked [her] all over [her] body." Green then grabbed Williford's head and hit her in the face with dirt and rocks from the flower bed. As he was hitting her, Green told Williford, "I'm going to kill you." He grabbed one of Williford's legs and started to drag her when officers appeared and intervened. Williford was taken to the emergency room by ambulance, where a CT scan revealed she had a fractured jaw. Williford required surgery for a detached retina as a result of the incident.

¶7. Green was arrested and charged with aggravated domestic violence as a non-violent habitual offender.[1] On March 3, 2021, however, the circuit court granted the State's motion

---

[1] Green was initially released on bond. A contempt hearing was held on October 8, 2020, because Green had failed to appear on September 17 for trial. Green admitted to the court that he had notice of the trial; so the court ordered him to serve thirty days' incarceration and denied him bond.

to amend the indictment to charge Green as a violent habitual offender under section 99-19-83.

¶8.      A jury trial was held on May 3, 2021.  Williford testified to the events of October 25, 2019, as stated above.  Regarding the injuries suffered as a result of Green's assault, she testified that she "had a fracture, my jaw, and just hurting all over."  She also noted her vision was blurry and that her retina was torn.  She did acknowledge that she had a torn retina before the incident, which had been repaired by her eye surgeon, Dr. Christopher Brown.  Williford went to see her eye surgeon after the assault, and her injury required further surgery.  She testified that before her surgery, she "could see," drive, and go places by herself, but after the assault, she could not drive or go to work.  Video footage of the assault obtained from the home's security camera was then played for the jury.

¶9.      On cross-examination, Williford admitted that she had been diagnosed with cataracts and detached retinas in both eyes before the assault.  She had surgery on her left eye in 2018.  But Williford clarified that none of these pre-existing eye conditions had prevented her from working, and she claimed that Dr. Brown told her she is now "legally blind."

¶10.    Officer Todd Baggett was one of the officers who responded to the 911 call.  When he first arrived, he noted that Green was throwing a phone (Williford's) against the wall.  As Officer Baggett approached, Green said, "I did it.  Y'all got here too soon.  I was going to kill the bi**h."  Green continued, "I should have killed her."  Officer Baggett noted Williford standing in the bushes.  Noting that she "seemed a little dazed and was complaining about

4

pain in the left side of her face and her left shoulder," Officer Baggett contacted emergency personnel to assist Williford.

¶11.    Dr. Brown was admitted as an expert in the field of opthamology and testified as to his treatment of Williford.   Dr. Brown began seeing Williford in November 2018 for "tractional retinal detachments from proliferative diabetic retinopathy in each eye."  He "performed a vitrectomy" on her left eye "with a plan to do subsequent work on her right eye." He said that Williford recovered from the procedure "remarkably well," and her vision had improved to "20/60 or so" by August of 2019.

¶12.    The day after the assault, Williford was treated by one of Dr. Brown's colleagues, who determined she had "decreased vision [and] . . . retinal detachment, and she had blood filling up the back of her eye and a lot of bruising around the eye[.]"  A few days later, Dr. Brown saw Williford and noted that she had what is called "a traumatic cataract."  When asked about Williford's previous history of cataracts, Dr. Brown explained, "And so she did previously have a cataract that would be expected of somebody who was an adult and also has had diabetes.  However, there was a marked shift in the cataract after she had trauma to her left eye." Dr. Brown opined that her condition was caused by trauma, not by diabetes or hypertension.  He noted that her CT scan "showed that she had nasal fractures and a fracture to the orbit" of her eye.  Dr. Brown also determined "that she had a traumatic macular hole"; so he had to refer her to a "cataract surgeon" to remove the lens.  Afterward, Dr. Brown performed "a repair of the rhegmatogenous retinal detachment and a repair of her traumatic

5

macular hole." He noted that Williford's "vision did improve some but not quite to where she was[.]"

¶13. Dr. Brown opined that to a reasonable degree of medical certainty, Williford's injuries were caused by trauma. He also stated that a person with her level of vision should not operate an automobile nor be able to view a computer screen. But Dr. Brown did clarify that Williford is not legally blind. A letter by Dr. Brown, dated November 6, 2019, was admitted into evidence with no objection from the defense. The letter noted that after Williford's retina surgery in June 2019, she could return to work and her vision was 20/60. The letter further stated that after her "trauma, she received significant reversal of her condition."

¶14. The defense moved for a directed verdict, which the circuit court denied. During the jury-instruction conference, counsel for the State and the defendant argued whether the defense's Jury Instruction D-IV, which included the lesser offense of simple domestic violence, was warranted. The circuit court refused Jury Instruction D-IV, finding no basis for the instruction as "[a]ll of the testimony that's been presented indicates serious bodily injury," and there was evidence presented that the defendant intended to kill Williford. The court concluded, "I think all of those things take it out of the realm of the lesser included."

¶15. The jury convicted Green of aggravated domestic violence, and the circuit court sentenced Green to life imprisonment in the custody of the MDOC as a habitual offender without eligibility for parole. He filed a motion for a new trial, alleging that the circuit court's refusal of his jury instruction for the lesser-included offense was error. The court

6

denied his motion, and he appeals.

## DISCUSSION

¶16.    The sole issue raised by Green is whether the circuit court erred in refusing Jury Instruction D-IV, which contained the lesser-included instruction for simple domestic violence.  "When a party claims that he is entitled to a lesser-included-offense instruction, the standard of review is de novo, as it is a question of law."  *Buchanan v. State*, 84 So. 3d 812, 815 (¶8) (Miss. Ct. App. 2011) (citing *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007)).

¶17.    "A defendant has an 'absolute right' to a jury instruction for a lesser-included offense *if* the evidence supports such an instruction."  *Brown v. State*, 285 So. 3d 671, 676 (¶12) (Miss. Ct. App. 2019) (emphasis added) (quoting *Downs*, 962 So. 2d at 1260 (¶22)).  Thus, if "the evidence is such" that a reasonable juror "could find the defendant not guilty of the principal offense charged . . . yet guilty of the lesser-included offense," then the court should give the lesser-included instruction.  *Torrey v. State*, 229 So. 3d 156, 166 (¶30) (Miss. Ct. App. 2017) (quoting *Bright v. State,* 986 So. 2d 1042, 1048 (¶21) (Miss. Ct. App. 2008)).  Conversely, "if the evidence can only support the principal charge, then the lesser-included offense should be refused."  *Brown*, 285 So. 3d at 676 (¶12).  As the Mississippi Supreme Court held in *Harbin v. State*, 478 So. 2d 796, 799 (Miss. 1985), "[w]here . . . uncontradicted physical facts so overwhelmingly support a finding of aggravated assault and render so unreasonable the suggestion that the accused may have been guilty only of simple assault,

7

reversal is not required."

¶18.    In the present case, Williford and Dr. Brown both testified that Williford suffered a fractured jaw as a result of the attack. While there was evidence presented that Williford had pre-existing retinal issues due to her diabetes, Dr. Brown further testified that Williford had suffered significant trauma to her eye and that surgery had failed to restore her vision to the level it was before the assault. Williford and Dr. Brown also stated that her impaired vision as a result of the assault prohibited her from driving or working. Officer Baggett testified as to Green's intention to kill Williford, noting Green's spontaneous utterance that he "was going to kill the bi\*\*h."

¶19.    The only distinction between aggravated and simple domestic assault is "the extent of the victim's injury, i.e., whether the victim suffered 'bodily injury' or 'serious bodily injury.'" *Bright*, 986 So. 2d at 1048 (¶24). In *Johnson v. State*, 252 So. 3d 597, 600 (¶13) (Miss. Ct. App. 2017), this Court noted that "serious bodily injury" (for purposes of aggravated assault) has been defined as: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or *protracted loss or impairment of the function of any bodily member or organ*." (Emphasis added) (quoting *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992)). An aggressor need not "beat his victim to within an inch of his life in order to be found guilty of aggravated assault." *Fleming*, 604 So. 2d at 292.

¶20.    In *Bright*, where the evidence showed that the victim had suffered several broken

8

bones in his face, this Court concluded that "there was insufficient evidence to support a lesser-included offense instruction on simple assault." *Bright*, 986 So. 2d at 1045, 1050 (¶¶8, 30). Similar to Williford, the victim in *Johnson* also "suffered a broken nose and broken eye socket." *Johnson*, 252 So. 2d at 601 (¶16); *see also Brown v. State*, 934 So. 2d 1039, 1043 (¶12) (Miss. Ct. App. 2006) (affirming trial court's refusal of a lesser-included-offense instruction on simple assault because the victim's injury—a broken jaw—was "serious").

¶21. We find no error in the circuit court's determination that no "reasonable juror could conclude that [Green was] guilty of simple assault based on the testimony that's been presented." Accordingly, we affirm Green's conviction and sentence.

¶22. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**