# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00420-COA

JAMES W.                                                    APPELLANT

v.

JACKSON COUNTY DEPARTMENT OF THE                          APPELLEES
MISSISSIPPI DEPARTMENT OF CHILD
PROTECTION SERVICES, BY ANDREA A.
SANDERS, J.G.W., A MINOR, BY AND
THROUGH HIS NEXT FRIEND, ANDREA A.
SANDERS AND THE MISSISSIPPI
DEPARTMENT OF CHILD PROTECTION
SERVICES

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2024 |
| TRIAL JUDGE: | HON. MARK H. WATTS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY YOUTH COURT |
| ATTORNEY FOR APPELLANT: | JAMES W. (PRO SE) |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KRISTI DUNCAN KENNEDY |
| | LINDSEY LAZINSKY |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 03/03/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.    James W. appeals from the judgment of the County Court of Jackson County, Youth Court Division, terminating his parental rights to his minor child, J.G.W.[1] On appeal, James argues that (1) the youth court judge erred by denying his motion to recuse, (2) the youth

---

[1] Since the record is confidential, we use initials to protect the identity of the minor children.

court's decision to terminate James's parental rights was not based on clear and convincing evidence, and (3) the youth court erred by admitting certain exhibits into evidence. Finding no error, we affirm the youth court's judgment terminating James's parental rights.

**FACTS AND PROCEDURAL HISTORY**

¶2. On June 3, 2021, Investigator Matthew Hoggatt was dispatched to Singing River Hospital in Pascagoula, Mississippi, to investigate an unresponsive infant, R.A., who had been admitted to the hospital. When he arrived, Investigator Hoggatt questioned James, the boyfriend of R.A.'s mother.[2] James admitted that he had been drinking and driving while R.A. was unbuckled in the passenger seat. James claimed that a vehicle passed him at a high rate of speed, causing his vehicle to spin several times. James further claimed that while the vehicle was spinning, R.A. hit her head on the passenger side window or doorframe. James then told Investigator Hoggatt that he drove home after the incident, but once he realized R.A. was unresponsive, he drove her to the hospital.[3] R.A. was later transported to Ochsner Medical Center in New Orleans, Louisiana, where she died.[4]

¶3. On June 22, 2021, the youth court entered an emergency custody order placing

---

[2] R.A. was not James's biological child. R.A.'s mother was in a neonatal intensive care unit at a hospital in Mobile, Alabama, with her and James's child, J.G.W.

[3] Notably, Investigator Hoggatt stated in his affidavit for a search warrant that another officer overheard a phone conversation between James and an unknown female. The female stated, "I can't believe you didn't take that baby to the hospital when she hit her head last night."

[4] The State Medical Examiner found that R.A.'s cause of death was blunt-force head injuries and that her manner of death was homicide.

James's child, J.G.W., in the custody of the Mississippi Department of Child Protection Services (CPS). The court found that J.G.W. was a household sibling of a minor who was suspected to have been physically abused or neglected. A guardian ad litem (GAL) was also appointed to the case. At the shelter hearing held on June 29, 2021, the court found that due to extraordinary circumstances involving the death of J.G.W.'s sibling, reasonable efforts to prevent removal were not made and should not be required.

¶4. On July 1, 2021, the youth court prosecutor filed a petition alleging that J.G.W. was a neglected child. Count I alleged that "J.G.W. is a sibling of a child that has been severely abused, resulting in death, while in the care and/or custody of [J.G.W.'s biological mother] and James, which is contrary to the best interest of said minor." On December 14, 2021, a permanency hearing was held in the youth court. The court found that the permanency plan of reunification with a parent was in the best interest of the minor child, and custody with a relative was the concurrent plan. The youth court ordered CPS to make reasonable efforts to achieve the permanency plan of reunification and the concurrent plan.

¶5. On February 22, 2022, the youth court adjudicated J.G.W. to be a neglected child as alleged in Count I of the petition. On March 9, 2022, the youth court held a disposition hearing. The youth court held that CPS was relieved of reasonable efforts to reunite J.G.W. with James. At the next permanency hearing held on June 14, 2022, the youth court ordered that CPS continue the permanency plan of reunification of J.G.W. with his biological mother and the concurrent plan of adoption by a relative. On December 14, 2022, the youth court

3

entered another permanency order finding that CPS made reasonable efforts toward the permanency plan and the concurrent plan. After considering testimony from a CPS social worker, the GAL, and receiving other relevant documentation, the court held that the permanency plan of reunification was no longer appropriate and not in the best interest of J.G.W. The youth court also adopted the permanency plan for the termination of James's parental rights and adoption, with the concurrent plan of reunification with J.G.W.'s biological mother or primary caretaker.

¶6.    On August 1, 2023, CPS filed a petition to terminate the parental rights of James. The youth court entered an order appointing Christopher Broome as the GAL. On October 12, 2023, J.G.W.'s mother voluntarily surrendered her parental rights. On October 18, 2023, Judge Mark Watts accepted her voluntary release.

¶7.    A final hearing was held on the petition to terminate the parental rights of James on March 8, 2024. On the day of the TPR hearing, James filed a motion for recusal. James argued that Judge Watts should be recused from the TPR hearing because he signed search warrants allowing the Jackson County Sheriff's Department to obtain information and property relating to James, issued an arrest warrant for James, required that James be held without bond, and presided over a preliminary hearing, wherein the court found that there was probable cause to bind James over to the grand jury for capital murder.[5] Judge Watts

---

[5] James was indicted for capital murder on July 28, 2022. During the TPR proceedings, he was in the custody of the Jackson County Sheriff's Department. Additionally, on August 8, 2025, James pled guilty to the lesser-included offenses of

denied the motion to recuse during the hearing.

¶8. After hearing all the testimony and considering all the other evidence, the youth court found that CPS met its burden of proof and entered a judgment terminating James's parental rights. The court found by clear and convincing evidence that James engaged in conduct constituting abandonment or desertion or is mentally, morally, or otherwise unfit to raise J.G.W. The court also found by clear and convincing evidence that the abusive or neglectful conduct of James caused, at least in part, an extreme and deep-seated antipathy by J.G.W. toward him, or some other substantial erosion of the relationship between the parent and J.G.W. constituting grounds for termination of his parental rights. Aggrieved, James appeals.

## DISCUSSION

### I. Motion to Recuse

¶9. James first argues that Judge Watts should have granted the motion to recuse. James did not file his motion to recuse until March 8, 2024, the day of the TPR hearing. The Uniform Civil Rules of Circuit and County Court Practice require a motion be filed "with the judge who is the subject of the motion within 30 days following notification to the parties of the name of the judge assigned to the case; or, if it is based upon facts which could not

---

manslaughter and tampering with a witness. The Jackson County Circuit Court sentenced him as a habitual offender to serve twenty years day for day in the custody of the Mississippi Department of Corrections (MDOC) for manslaughter. The circuit court also sentenced him to ten years in MDOC custody, with five years suspended and five years to serve, followed by five years of post-release supervision for tampering with a witness, and the court ordered this sentence to run consecutively with his twenty-year sentence for manslaughter.

5

reasonably have been known to the filing party within such time, it shall be filed within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted." UCRCCC 1.15. James clearly knew that Judge Watts was presiding over his TPR case at the hearing on October 18, 2023. At this hearing, Judge Watts accepted the voluntary release of J.G.W.'s mother's parental rights, appointed a public defender for James, and also granted a continuance so James's attorney could acclimate himself with the case. Therefore, James's motion was untimely and thus is procedurally barred.

¶10.    Notwithstanding the procedural bar, upon reviewing the record, we find no merit to James's argument that the youth court judge was required to recuse. "This Court reviews the denial of a motion to recuse under an abuse-of-discretion standard." *Good v. Sanders*, 418 So. 3d 1241, 1247 (¶22) (Miss. Ct. App. 2025). "On appeal, a trial judge is presumed to be qualified and unbiased[,] and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption." *Jones v. State*, 841 So. 2d 115, 135 (¶60) (Miss. 2003). "In determining whether a judge should have recused himself, this Court uses an objective test: 'A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.'" *Torrey v. State*, 229 So. 3d 156, 162 (¶17) (Miss. Ct. App. 2017) (quoting *Shumpert v. State*, 983 So. 2d 1074, 1078 (¶14) (Miss. Ct. App. 2008)). "The challenger has to overcome the presumption 'that a judge, sworn to administer impartial justice, is qualified and unbiased.' This presumption may only be overcome by evidence which produces a

6

reasonable doubt about the validity of the presumption." *Id*.

¶11.    James contends that Judge Watts had considerable prior knowledge of his capital murder arrest and indictment beyond the evidence presented during the TPR hearing. Our Supreme Court has held that a "judge is not disqualified to sit at the trial of one accused of a crime merely because previously thereto he has participated in other legal proceedings against the same person." *Adams v. State*, 220 Miss. 812, 72 So. 2d 211, 214 (1954) (citing 30 Am. Jur. 2d *Judges* § 82, at 790). In ruling in this case, Judge Watts stated, "Whether or not you get convicted of capital murder is a separate incident than what we're doing here, if that makes any sense. The burden of proof is different, it's a different case."[6] *Adams* provided that a judge who presided over a civil action regarding the defendant was not disqualified from presiding over the criminal trial involving the same defendant and the same facts. *Id*. Although Judge Watts's involvement in James's criminal case stems from the same facts and circumstances presented to him as a basis for James's termination of parental rights, Judge Watts clearly differentiated the proceeding in the TPR from his prior involvement in James's capital murder charge. Judge Watts noted, "The facts that did come out were that when this other child was in your custody and control, that you were drinking, by your own admission, and that you had an accident which resulted in the death of the child. That's what

---

[6] This Court has held that a termination of parental rights cannot be solely attributable to a parent's incarceration. *In re K.D.G. II*, 68 So. 3d 748, 752 (¶18) (Miss. Ct. App. 2011) (citing *In re A.M.A.*, 986 So. 2d 999, 1013 (¶32) (Miss. Ct. App. 2007)). James's conduct that resulted in the death of J.G.W.'s half-sister, R.A., established aggravated circumstances with respect to J.G.W.

7

the Court got out of it."[7] There is no evidence that Judge Watts acted with bias, with prejudice, or in a partial manner. Therefore, the youth court judge did not abuse his discretion in denying James's motion for recusal.

## II.     Termination of Parental Rights

¶12.    James next alleges that CPS failed to prove by clear and convincing evidence that his parental rights should be terminated. "In cases where parental rights have been terminated, our scope of review is limited." *Smith v. Doe*, 314 So. 3d 154, 162 (¶26) (Miss. Ct. App. 2021). The youth court's "findings of fact are viewed under the manifest error/substantial credible evidence test." *S.Z.O. v. Harrison Cnty. Dep't of Child Prot. Servs.*, 396 So. 3d 1225, 1235 (¶45) (Miss. Ct. App. 2024) (quoting *S.F. v. Lamar Cnty. Dep't of Child Prot. Servs.*, 373 So. 3d 985, 987 (¶8) (Miss. 2023)). "[T]his Court asks not how it would have decided the case ab initio but whether credible proof exists to support the judge's findings of fact by clear and convincing evidence." *Id*.

¶13.    James specifically contends that the GAL did not conduct "a good investigation to establish that there was not [a] parental relationship that shouldn't be preserved, especially since [James] stand[s] innocent of all crimes today." The GAL prepared a report and recommendation that included all the documents he reviewed, the individuals he spoke with, and a timeline of significant events. Based on the information he gathered during his

---

[7] Canon 3 of the Mississippi Code of Judicial Conduct requires recusal when the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." Miss. Code Jud. Conduct Canon 3(E)(1)(a).

investigation and the testimony he heard during the TPR hearing, the GAL recommended that James's parental rights should be terminated, specifically because of the statements James made to the police regarding the incident involving R.A. The GAL testified that he believed James was "reckless and negligent, and having custody of the child, he lacks parental protective capacity for the child." The youth court found that the GAL was "experienced and qualified" and that he conducted a "thorough and competent independent investigation and took an active part in the hearing of this cause." James alleges that the GAL did not reach out to him, any family member, the child, or the foster parents. This Court has held that "because the findings in the GAL report were consistent with the evidence, any alleged failure by the GAL to visit with the father or child independently did not warrant vacating the termination of the father's parental rights." *In re J.K.*, 304 So. 3d 184, 192 (¶28) (Miss. Ct. App. 2020).

¶14. Although the youth court took the GAL's report and testimony into consideration, it is clear from our review of the record that the youth court judge made his own independent assessment of whether James's parental rights should be terminated. During his bench ruling, the youth court judge stated, "[Y]ou were drunk driving with a child who was obviously unrestrained in the car at some time in the middle of the night, and that resulted in the child's death. That's where we are." He continued, "Now, since that happened, it's been three or four years since you've seen this child. That's not your fault so to speak. It's not like you were out and could have seen the child and could not have. You've been incarcerated, and I understand that. Okay? So I don't necessarily hold that against you, but that's where we are.

9

The result of a decision you made back then resulted in where we are now."

¶15. We find that the youth court's decision to terminate James's parental rights was supported by substantial credible evidence in addition to the GAL's report and testimony. Accordingly, we find the youth court did not err in terminating James's parental rights.

### III. Admitting Exhibits

¶16. On appeal, we review a trial court's admission or exclusion of evidence for abuse of discretion. *Clanton v. State*, 365 So. 3d 203, 211 (¶23) (Miss. 2023) (citing *Carothers v. State*, 152 So. 3d 277, 281 (¶14) (Miss. 2014)). We will reverse the trial court's decision if "the error adversely affects a substantial right of a party." *Id*. James argues that the youth court erred by admitting prior youth court orders, the State Medical Examiner's "Report of Postmortem Examination," James's indictment, and an excerpt of a transcript. With the exception of James's claim that the youth court erred by admitting the report of postmortem examination into evidence, he has failed to make meaningful arguments that the youth court erred by admitting the remaining exhibits into evidence. James "has a duty to make more than mere assertions and should set forth reasons for his arguments and cite authorities in their support." *Gilbert v. State*, 379 So. 3d 890, 898 (¶13) (Miss. Ct. App. 2023). Therefore, James's issue here is procedurally barred from review since he failed to make meaningful arguments or cite pertinent authority in addressing the remaining issues. *See id*. Notwithstanding the bar, we briefly address the youth court's admission of the postmortem examination report.

¶17. The youth court admitted the report of postmortem examination as a record of regularly conducted activity, pursuant to the Mississippi Rules of Evidence 803(6) and 803(8). James alleges the report was not properly certified, contained no explanation of its findings, and that its admission violated his right to confront his accuser. We find James's claims are without merit. The report included the manner and cause of death. The medical examiner also attached an affidavit certifying that the record was made and kept as a regularly conducted activity. Additionally, our Supreme Court has recognized that "[b]y its own language, the Confrontation Clause extends only to criminal cases." *Boyd v. Miss. Dep't of Corr.*, 339 So. 3d 180, 187 (¶24) (Miss. Ct. App. 2022). The case before us is not a criminal action to which the Sixth Amendment, including the Confrontation Clause, would apply; therefore, James's claim is without merit.

¶18. Nonetheless, the youth court considered undisputed evidence that R.A. sustained head injuries because James was recklessly driving after consuming alcohol, and the youth court heard testimony from the investigating officer that James willingly admitted that he took R.A. to the hospital one to two hours after she hit her head against the passenger window or doorframe.

## CONCLUSION

¶19. For the foregoing reasons, we affirm the youth court's judgment terminating James's parental rights.

¶20. **AFFIRMED.**

11

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**